1  EDWARD H. TAKASHIMA, State Bar No. 270945
     etakashima@bsfllp.com
2  **BOIES SCHILLER FLEXNER LLP**
   401 Wilshire Blvd, Suite 850
3  Santa Monica, CA 90401
   Telephone: (310) 752-2400
4  Facsimile:  (310) 752-2490

5

6  Counsel for Defendant ABS HEALTHCARE SERVICES, LLC and
   HEALTH OPTION ONE, LLC

7

8

9                    **UNITED STATES DISTRICT COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12  | LEGACY INSURANCE SOLUTIONS | Case No. 2:20-cv-04097-PSG-JEM |

LEGACY INSURANCE SOLUTIONS LLC, a California limited liability company, and BRADLEY TIERNEY an individual,

             Plaintiffs,

        v.

ABS HEALTHCARE SERVICES, LLC, a Florida limited liability company, and HEALTH OPTION ONE, LLC, a Florida limited liability company, and DOES I through 20, inclusive,

             Defendants.

Case No. 2:20-cv-04097-PSG-JEM

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'** *EX PARTE* **APPLICATION FOR REMAND**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 1

BACKGROUND .............................................................................................. 3

ARGUMENT .................................................................................................... 4

I.    THE ADMISSIBLE EVIDENCE IS THAT COMPLETE
DIVERSITY EXISTS. AT MOST, PLAINTIFFS' HEARSAY
DECLARATIONS RAISE AN ISSUE OF FACT AS TO WHICH
LIMITED JURISDICTIONAL DISCOVERY IS APPROPRIATE . 5

    i.    ICD Reasonably Removed This Case Based on Public Records
Demonstrating that Legacy Was a California Citizen ............... 6

    ii.    Legacy's New Evidence Contradicts Itself, Its Prior
Statements, and Public Records ................................................ 7

    iii.    Jurisdictional Discovery Is Necessary to Resolve Legacy's
Citizenship .................................................................................. 8

II.    DEFENDANTS REMOVED IN GOOD FAITH BASED ON
REASONABLE INQUIRY, AND AN AWARD OF FEES FOR
REMOVAL IS INAPPROPRIATE ...................................... 12

III.    REGARDLESS, LEGACY IS FRAUDULENTLY JOINED AND
ITS CITIZENSHIP SHOULD BE DISREGARDED IN ASSESSING
DIVERSITY ......................................................................... 13

IV.    THERE IS NO OCCASION FOR EXTRAORDINARY EX PARTE
RELIEF ................................................................................ 17

    A.    Plaintiffs have not shown irreparable harm. ................................ 19

    B.    Tierney is Not without Fault ......................................................... 20

CONCLUSION ................................................................................................ 21

# INTRODUCTION[1]

The motion to remand, D.E. 10, and more specifically the *ex parte* application for remand, D.E. 11, is part of Plaintiff Bradley Tierney's ("Tierney") effort to avoid litigating this dispute in Broward County, Florida, where he has already been sued by ICD and which is the venue to which he explicitly agreed when he executed his Independent Agent or Agency of Record Agreement with ICD (the "ICD Exclusive Agent Agreement"), a contract that he signed in Florida, and that is governed by Florida law.

Tierney's claim of irreparable harm is belied by his actions upon being sued by ICD in Florida, as agreed to by the parties. Rather than seeking relief in the already-filed action against him, he filed what he concedes is a duplicative action in California state court. If Tierney thought he needed any expeditious relief, he could easily have—and should have--sought it in Florida, where his lawyers are based. Tierney's actions are a naked attempt at forum shopping, there is no threatened irreparable harm to Tierney or Legacy, and there is no need for this Court to take up Plaintiffs' invitation to rule on the motion precipitously.

Moreover, the reason that Tierney urges remand (that a member of plaintiff Legacy Insurance Solutions LLC ("Legacy") is a Florida resident, thus precluding diversity jurisdiction) is not only not established but is inconsistent with Legacy's own official documents. Every LLC is required to file forms with the state of California showing its members. A member managed LLC, which Legacy is, is required to identify "all" its members. The only member shown in Legacy's filing is Mr. Tierney.

Moreover, in California state court, Tierney and Legacy supported their *ex parte* motion for injunctive relief with a declaration from Adam Beeman. That is the same person Plaintiffs now assert is a 50% member of Legacy and a Florida resident, thus

---

[1] In responding to Plaintiffs' ex parte motion and motion to remand, Defendants do not waive any defenses, including personal jurisdiction, that will be properly raised in a timely Rule 12(b) motion.

1  destroying diversity.  Yet, nowhere in Mr. Beeman's declaration did he or Plaintiffs

2  bother to inform the Court of this supposed ownership interest in Legacy, which is a

3  fact that clearly should have been disclosed.

4       Next, although admitting that Mr. Beeman is not shown as a member of Legacy

5  in any publicly-available source—and that the only member shown in Legacy's public

6  records is Mr. Tierney, in their motion to remand Plaintiffs chastise ICD for not having

7  "reached out to Legacy Insurance's counsel requesting information as to the citizenship

8  of Legacy's Insurance members," something that was not required of ICD.  (D.E. 10 at

9  p. 12 n.2.)  But after the case was removed the only document provided to ICD by

10  Legacy to support the proposition that Mr. Beeman is one of its members, an

11  unexecuted "Operating Agreement of Legacy Insurance Solutions, LLC," in fact

12  provides a California address for Mr. Beeman.  (Exhibit D at p. 5.)[2]  Plaintiffs fail to

13  disclose this fact to the Court, too.[3]

14       In view of the serious questions about Mr. Beeman's membership in Legacy,

15  ICD reasonably requested that Mr. Beeman be made available for deposition, and that

16  relevant documents be produced, with respect to that limited topic.  Tierney and Legacy

17  rejected that request, insisting that ICD was, in essence, bound to take their word that

18  Mr. Beeman was a member of Legacy.  That is not only ***not*** the law, but is particularly

19  inappropriate here where the only document provided by Legacy to ICD shows a

20  California address for Mr. Beeman.

21       Plaintiffs' rush to remand is further questionable in view of the nature of the

22  claims asserted in this action.  They concede in their own complaint that the

23  controversy here concerns "the rights and obligations *of the parties* relating to, and

24  

25  [2] "Exhibit" refers to exhibits to the Declaration of Edward H. Takashima, attached hereto.

26  [3] At 2 p.m. today, just as this opposition was being readied for filing, Plaintiffs have filed a different declaration declaration of Mr. Tierney.  D.E. 14.  That declaration

27  purports to attach an executed copy of the operating agreement showing a Florida address for Mr. Beeman.  Because of the lateness of this filing, we cannot address it in

28  detail here, except to note that in and of itself it raises questions as to which discovery should be allowed.

arising from Defendants' Independent Agent or Agency of Record Agreement ("Independent Agent Agreement") entered into between Tierney and Defendants." (D.E. 1-1 at 3 ¶ 2 (emphasis added).)   Legacy's claims are merely derivative of Tierney's claims; in fact, Legacy is explicit that its claimed harm is the result of ICD's attempt to enforce its rights against Tierney under the ICD Exclusive Agent Agreement.  Defendants have no contract with Legacy, owe no duty to Legacy, and have done nothing to Legacy.  It is clear that Legacy was included as a plaintiff for the sole reason of defeating diversity jurisdiction.

As these facts illustrate, Plaintiffs' motion is a clear misuse of the Court's extraordinary *ex parte* process. On this record, *ex parte* relief is inappropriate, remand is inappropriate, and Defendants are entitled to take appropriate jurisdictional discovery to ascertain Legacy's actual citizenship and that of its members. Alternatively, this Court should ignore Legacy's citizenship as a party that was fraudulently joined in order to defeat subject matter jurisdiction.  Legacy has no contract or agreement with Defendants, Defendants owe Legacy no duty, and Legacy has no claims against Defendants apart from those of Tierney. The Court should deny Plaintiffs' motion for remand.

## **BACKGROUND**

This dispute originated in Florida, where Tierney signed a contract with ICD in 2016, where among other things he agreed not to disclose ICD's confidential information and trade secrets or use them to improperly compete against ICD.  D.E. 1-1 at 16; D.E. 10-1 at 26 ¶ 7.

The contract explicitly provided that any action related to the contract be filed in Broward County, Florida.

When ICD learned that Tierney was violating his contract by using ICD's trade secrets to compete against it and sell insurance by means of a company called Kratos, in addition to other contractual violations and tortious conduct, ICD sent Tierney a cease-and-desist letter on April 4, 2020.  D.E. 10-1 at 52.  When Tierney failed to

respond to this letter, ICD filed suit against him in Florida state court on April 22, 2020. Exhibit A.  The next day, on April 23, 2020, and without responding to the Florida lawsuit, Tierney filed a suit against ICD in Superior Court in the County of Los Angeles, seeking declaratory relief related to the Florida contract, as well as damages and other relief for unfair competition allegedly stemming from ICD's proper efforts to enforce the contract in Florida court.  D.E. 1-1.  Based on publicly available information (described in more detail below) suggesting that Legacy is a single-member LLC owned by Tierney, a California resident, ICD, who are Florida citizens and all of whose members are Florida citizens, removed to this Court on May 4, 2020 on the basis of diversity jurisdiction.  D.E. 1.

Plaintiffs now have filed a motion to remand, D.E. 10, as well an ex parte application for remand or to alternatively shorten the time for hearing on the motion, D.E. 11.

## **ARGUMENT**

ICD reasonably and in good faith removed this case based on publicly-available records indicating that Legacy (including its members) were California citizens, thus establishing complete diversity given that Tierney is a California citizen and ICD and all its members are Florida citizens.  Plaintiffs now seek remand based on two conclusory, self-serving hearsay declarations (which they have refused to permit to be cross examined) stating one Legacy member, Adam Beeman, is a Florida citizen. Because these declarations raise irreconcilable factual conflicts with publicly available information, ICD should be accorded limited jurisdictional discovery to ascertain the facts concerning Legacy's citizenship, and because ICD removed in good faith, Plaintiffs' request for fees should be denied.  Alternatively, this court should disregard

Legacy's citizenship as a fraudulently-joined plaintiff and deny the remand motion.[4]
In any event, ex parte treatment of the remand request is wholly improper.

## I.   THE ADMISSIBLE EVIDENCE IS THAT COMPLETE DIVERSITY EXISTS. AT MOST, PLAINTIFFS' HEARSAY DECLARATIONS RAISE AN ISSUE OF FACT AS TO WHICH LIMITED JURISDICTIONAL DISCOVERY IS APPROPRIATE

ICD promptly and reasonably removed this case based on publicly-available information suggesting that Legacy is a resident of California, thus establishing complete diversity of citizenship.

Plaintiffs' attempt to defeat diversity is entirely based on the claim that Beeman is a Florida citizen and a member of the LLC.  Plaintiffs submit two self-serving, conclusory affidavits purporting to establish this.  Because these suggestions irreconcilably conflict with publicly available information and are undercut by Tierney and Beeman's own pre-litigation statements, ICD should be permitted to take limited jurisdictional discovery to test the accuracy and veracity of these statements and documents and provide a fair record by which the Court can correctly determine whether there is subject matter jurisdiction in this case.

ICD's right to cross examination and discovery is particularly important where, as here, the claim of Beeman being a member is made for the first time after removal and for the purpose of defeating diversity; is inconsistent with the LLC's official filings, which do not list Beeman despite purporting to list "all" members; was not mentioned either in the LLC's Complaint or in Beeman's declaration submitted in this case; and the purported "operating agreement" proffered by Legacy's counsel was not

---

[4] To the extent it is necessary to do so, ICD respectfully requests that this Court construe this response as an amendment to its notice of removal in order to cure any defects that may exist in that notice.  *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.2 (9th Cir. 2002) ("The district court did not err in construing Petsmart's opposition as an amendment of its notice of removal.").

1  submitted in this case, was not signed, has not been authenticated, is inconsistent with

2  the other evidence, and in fact suggests that Beeman is a California resident.

3      Notably, when counsel for Legacy first raised its claim that Beeman was a

4  member of Legacy and Florida citizen, counsel for ICD asked when Beeman would be

5  available for a deposition to test this assertion.  Takashima Declaration ¶ 3.  Beeman's

6  counsel refused, instead filing this ex parte motion for remand resting only on the

7  conclusory affidavits.  If Beeman had been made promptly available for deposition,

8  then Legacy's citizenship may have been already been established, without the need to

9  litigate this motion and seek the court's involvement.

10   **i.  ICD Reasonably Removed This Case Based on Public Records Demonstrating that Legacy Was a California Citizen**

11

12      Records filed with the State of California establish that:

13  • The sole registered agent for Legacy is Brad Tierney. D.E. 1-6.

14  • The entity's address is located in Los Angeles, California. D.E. 1-6.

15  • The "LLC Management" of Legacy is "Member-Managed." D.E. 1-6.

16  • "Brad Tierney" is listed as the only "Member" of the LLC.  Exhibit B.  The form

17     requires that where, as is true with Legacy, the LLC is "member-managed" and

18     no manager has been appointed or elected, all members must be listed.[5]

19  • The Management Structure of Legacy is "All LLC Member(s)." Exhibit C.  The

20     three options for how the LLC will be managed are "One Manager," "More than

21     One Manager," or "All LLC Member(s)."[6]

22      In addition, Tierney stated in a sworn declaration in the state court lawsuit that

23  he is "the managing member and an agent of record for Legacy."  D.E. 10-1 at 25 ¶ 1.

24  He also stated that "I formed a new California company, [Legacy], to sell the products

25  and services on behalf of Kratos."  Id. ¶ 18.  Beeman also submitted a declaration in

26

27  [5] *Accord* Instructions for Completing the Statement of Information (Form LLC-12), at Item 5, online at https://bpd.cdn.sos.ca.gov/llc/forms/llc-12.pdf.

28  [6] Instructions for Completing the Articles of Organization (Form LLC-1), at Page 6 Item 6, online at https://bpd.cdn.sos.ca.gov/llc/forms/llc-1.pdf.

1    the suit, in which he did not disclose his purported membership or affiliation with
2    Legacy at all.  Quite to the contrary, describing himself as a managing member of
3    Kratos Investments, he described Legacy as "One such agency that we have contracted
4    with for such purposes [selling insurance]."  *Id.* at 54 ¶¶ 1, 4.

5        Accordingly, based on information that Legacy is a member-managed LLC; that
6    it is managed by "All LLC Members," that Tierney was listed as the only member of
7    Legacy, that Tierney described himself as "*the* managing member" of Legacy, that
8    Tierney stated that "*I* formed" Legacy, and that Tierney is a California resident, *see*
9    D.E. 1-1 ¶ 8, ICD reasonably concluded that Tierney was Legacy's sole member and
10   thus Legacy was a citizen of only California.  Since ICD and all of its members are
11   citizens of Florida, complete diversity existed, so ICD reasonably removed to federal
12   court.  *See RSE-CA, LLC v. Proficio Mortgage Ventures, LLC*, SACV141698JLSANX,
13   2014 WL 12560872, at *1 (C.D. Cal. Nov. 19, 2014) (noting that "colorable" showing
14   of jurisdiction existed where LLC's principal place of business is located in Southern
15   California, and thus members are likely California citizens).

16   **ii.    Legacy's New Evidence Contradicts Itself, Its Prior Statements, and**
17   **Public Records**

18       In support of their contention that Legacy is a California citizen, Tierney submits
19   only two one-page, conclusory declarations from Tierney and Adam Beeman, both of
20   whom state that they are two members of Legacy and that Beeman is a Florida citizen.
21   D.E. 10-2, 10-3.

22       Tierney also states that he failed to consult with an attorney before filling out the
23   California paperwork, and was "under the impression that I was only required to list
24   one member or member of Legacy Insurance as there was only space on the form for a
25   single member or manager."  D.E. 10-3 ¶ 5.  Tierney thus appears to state that the
26   California forms he filled out were incorrect or misleading, despite the clear
27   instructions on the face of the form requiring that "All members or managers" be listed;
28   immediately preceding the space for listing members, the form states that "If the LLC

1    has additional managers/members, enter the name(s) and addresses on Form LLC-

2    12A." Exhibit B.  These statements confirm that the affidavits contradict Legacy's

3    public filings.  Moreover, even taking Tierney's self-serving statement as true, the

4    public filings would *still* be inconsistent with the notion that Legacy is not a single-

5    member LLC.  Tierney stated in his affidavit that he is the "*the* managing member of

6    Legacy," and forms with the state, separate and apart from the failure to list all

7    members, indicate that the LLC is managed by "All LLC Members."  Exhibit C; D.E

8    10-1 at 25 ¶ 1.

9           These two declarations are the only evidence that Tierney submits as to Legacy's

10   membership and Beeman's citizenship.  He does not attach Legacy's operating

11   agreement or other evidence to contradict the public filings indicating that Legacy is a

12   California citizen.

13          Legacy's failure to include its operating agreement is perplexing, given that prior

14   to remand Tierney's counsel *did* send ICD's counsel what purported to be an unsigned,

15   unauthenticated version of the operating agreement.  Takashima Decl. ¶ 7 and Exhibit

16   D.  That purported operating agreement, even if authentic, however, only raised more

17   questions—it listed Beeman as a 50% member, but listed him with a *California*

18   address, the same address used by Legacy and Tierney.  Exhibit D.  This raises the

19   question of whether even if, in contradiction of publicly-filed records, Beeman is a

20   member of Legacy, he is actually a California citizen. (Tierney and Beeman seek to

21   rely on the fact that ICD sued Beeman in Florida court alleging that he was a resident

22   of Florida. Although that was true, to the best of ICD's knowledge at the time, it does

23   not address the issue of citizenship since a person may be a resident of more than one

24   state.   The purported Legacy "operating agreement" lists Beeman with a California

25   address.)

26      **iii.      Jurisdictional Discovery Is Necessary to Resolve Legacy's
                    Citizenship**

27

28

1   "[W]here issues arise as to jurisdiction or venue, discovery is available to

2   ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437

3   U.S. 340, 351 n.13 (1978).  While the trial court has "broad discretion" to permit or

4   deny jurisdictional discovery, it "should ordinarily be granted where pertinent facts

5   bearing on the question of jurisdiction are controverted or where a more satisfactory

6   showing of the facts is necessary." *Butcher's Union Local No. 498, United Food &*

7   *Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quotation

8   omitted).  Thus "Although a refusal to grant discovery to establish jurisdiction is not

9   an abuse of discretion when it is clear that further discovery would not demonstrate

10  facts sufficient to constitute a basis for jurisdiction, discovery should be granted when,

11  as here, the jurisdictional facts are contested or more facts are needed." *Laub v. U.S.*

12  *Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quotation omitted).

13      Thus courts in this circuit have routinely allowed jurisdictional discovery where

14  the jurisdictional facts are contested or controverted, and it is not clear that further

15  discovery would be fruitless.  Thus in *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198

16  F.R.D. 670, 674-75 (S.D. Cal. 2001), the court granted discovery where the facts were

17  "controverted" even in light of affidavits submitted by the party opposing discovery.

18  Likewise, in *Berkeley Research Group, LLC v. United Potato Growers of Am., Inc.*, C

19  16-07205 WHA, 2017 WL 952680, at *2 (N.D. Cal. Mar. 13, 2017), the court granted

20  jurisdictional discovery where the plaintiff's declarations regarding its own citizenship

21  left the need for "a more satisfactory showing of the facts." *Id.* (quotation omitted).

22      Here, given the irreconcilable conflict between Legacy's affidavits and

23  documents and the publicly available information, the jurisdictional facts "are

24  controverted" and "a more satisfactory showing of the facts is necessary" to establish

25  Legacy's citizenship. *Butcher's Union Local No. 498, United Food & Commercial*

26  *Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540.  As explained above, publicly-filed

27  records establish on their face that Legacy is a single-member LLC with California

28  citizenship.  This notion was *fully corroborated* by Tierney and Beeman's affidavits in

the underlying state court proceedings.  Beeman wholly failed to disclose his 50% membership in Legacy, instead referring to Legacy as an unrelated third party with whom his company did business at arms-length.   Then, following Defendants' reasonable, well-founded decision to remove to federal court, Plaintiffs' counsel sent them what purported to be Legacy's (unsigned, unauthenticated) operating agreement, which for the first time disclosed that Beeman was a member of Legacy, but also listed Beeman with a *California* address.  Shockingly, Tierney and Beeman do not attempt to authenticate that agreement or otherwise provide it to the court, likely because it raises more questions than it answers.  Nor do they provide any other written evidence of Legacy's (or Beeman's) citizenship.  Instead, they provide two conclusory affidavits that directly contradict public filings, fail to explain the errors in the public filings, and create inconsistencies with their own previously-filed declarations in state court.  In sum, "the jurisdictional facts are contested [and] more facts are needed."  *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quotation omitted).

Courts frequently allow challenges to the veracity or sufficiency of self-serving declarations or affidavits where, as here, there is other evidence contradicting the declarations or otherwise suggesting that the declaration may not fully convey the facts. Thus the court in *Rascon v. Checkcare Enterprises*, C 06-0256PJH, 2006 WL 2192114, at *3 (N.D. Cal. Aug. 1, 2006), ordered jurisdictional discovery to test affidavits opposing jurisdiction where there was evidence that "might sufficiently controvert" the testimony, and noted that jurisdictional discovery is appropriate where, as here, a party demonstrates how further discovery "'would allow it to contradict' facts set forth in affidavits establishing no jurisdiction."  *Id.* (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995); *accord, e.g., JT's Frames, Inc. v. Casares*, 16-CV-2504, 2018 WL 835225, at *5 (N.D. Ill. Feb. 13, 2018) (allowing jurisdictional discovery where a party's "evidentiary submissions do not preclude the possibility" that subject matter jurisdiction existed); *Proud Veterans, LLC v. Ben-Menashe*, 12-CV-1126-JAR, 2012 WL 6681888, at *1 (D. Kan. Dec. 21, 2012) (agreeing that "the contradictory

1    declarations and affidavits in this case establish that the pertinent jurisdictional facts

2    are controverted" and allowing jurisdictional discovery); *Marnavi SpA v. Keehan*, CIV.

3    08-00389-SLRLPS, 2010 WL 1499583, at *7 (D. Del. Apr. 14, 2010) (granting party's

4    request "to take jurisdictional discovery to test the veracity of the affidavits" opposing

5    jurisdiction where the record "contains sufficient non-frivolous allegations to support

6    the request"); *Admiral Ins. Co. v. Aspen Ins. UK Ltd.*, 17-CV-00703-AJB-WVG, 2017

7    WL 3141801, at *1 (S.D. Cal. July 24, 2017) (noting that court granted removing

8    defendants' request for jurisdictional discovery in opposition to remand motion).

9        The fact that ICD is seeking discovery in opposition to a remand motion does

10   not undercut these principles; courts routinely order jurisdictional discovery

11   concerning remand motions.  *E.g., Berkeley Research Group, LLC v. United Potato

12   Growers of Am., Inc.*, C 16-07205 WHA, 2017 WL 952680, at *2 (N.D. Cal. Mar. 13,

13   2017) ("BRG's motion to remand is HELD IN ABEYANCE pending limited

14   jurisdictional discovery" requested by removing defendants); *RSE-CA, LLC v. Proficio

15   Mortgage Ventures, LLC*, SACV141698JLSANX, 2014 WL 12560872, at *2 (C.D.

16   Cal. Nov. 19, 2014) (granting removing defendants' request for jurisdictional discovery

17   in response to court's jurisdictional inquiry); *Deleon v. Amylin Pharm., Inc.*,

18   08CV1651 L (CAB), 2008 WL 11337016, at *1 (S.D. Cal. Oct. 29, 2008) (granting

19   defendant's pre-remand motion for jurisdictional discovery).

20       ICD seeks only limited, efficient discovery on the question of Legacy's

21   citizenship.  Thus in *Berkeley Research Group, LLC v. United Potato Growers of Am.,

22   Inc.*, C 16-07205 WHA, 2017 WL 952680, at *2 (N.D. Cal. Mar. 13, 2017), where the

23   citizenship of a plaintiff LLC was not controverted, the court ordered limited

24   jurisdictional discovery against each member of the LLC, including "(1) ten reasonably

25   narrow interrogatories, (2) ten reasonably narrow document requests, and (3) one half-

26   day deposition."  *Id.* at *2.  That is all that ICD seeks here.  This reasonable amount of

27   limited discovery will not substantially delay this litigation, but will instead provide

28

the court with the record it needs to resolve the conflicting evidence regarding Legacy's citizenship.

In sum, "Because additional discovery would be useful to establish federal subject matter jurisdiction, and because [Legacy's citizenship] is contested," *Laub*, 342 F.3d at 1093, this Court should hold Plaintiffs' remand motion in abeyance pending jurisdictional discovery.

## II.   DEFENDANTS REMOVED IN GOOD FAITH BASED ON REASONABLE INQUIRY, AND AN AWARD OF FEES FOR REMOVAL IS INAPPROPRIATE

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Dall v. Albertson's Inc.*, 349 Fed. Appx. 158, 160 (9th Cir. 2009) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). As explained above, *see* Part I.A, ICD had an objectively reasonable basis for removal: public records clearly suggested that ICD was a single-member LLC managed by Tierney.[7]

Plaintiffs' counsel advances the preposterous argument that Defendants' counsel was required to call him to ask him about the citizenship of his clients. This obligation does not exist. Based on the information in the state court Complaint and a public records search, Defendants removed this action based on the understanding that

---

[7] Plaintiffs suggest that because ICD alleged that Legacy is a citizen of California, rather than specifically alleging the citizenship of its members, ICD must have failed to reasonably investigate its members. But ICD did so, and determined, to this best of its knowledge based on publicly-available information, that ICD's sole member was Tierney, and removed in good faith on that base. ICD did not specifically allege the citizenship of Legacy's members because it did not have, and still does not have, a definitive answer regarding Legacy's members and their citizenship. Rather, ICD made the good-faith allegation that Legacy (and, by necessary implication, its members) was a citizen of California, and allegation that is "plausible" in light of the public filings. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (holding that "a defendant's notice of removal need include only a plausible allegation" concerning subject matter jurisdiction).

Legacy's citizenship is California. The Ninth Circuit has stated that, in evaluating the propriety of removal, courts will not be required to "inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695 (9th Cir. 2005) (quotation omitted). At the time of removal, and still today, "Defendants had a reasonable, good faith belief on which to base their Notice of Removal[,]" based on a reasonable investigation into the citizenship of the parties, including a public records search that revealed that Legacy has only one member—Tierney, who is a citizen of California. *Bryant v. Bar Louie Anaheim Inc.*, No. SACV100906DOCAJWX, 2010 WL 11595816, at *3 (C.D. Cal. Aug. 13, 2010) (noting that Defendants met their obligation in the Notice of Removal, which requires only a "short and plain statement" of the grounds for removal. 28 U.S.C. § 1446(a).). Since citizenship is a contested issue, Defendants bear the burden of establishing diversity, and jurisdictional discovery is required in order to do so. In the cases cited by Plaintiffs, diversity was not contested, making them inapposite. Here, "defendants have independent grounds to support the conclusion that plaintiffs are citizens of a state other than their own." *Id.* at * 2.

## III. REGARDLESS, LEGACY IS FRAUDULENTLY JOINED AND ITS CITIZENSHIP SHOULD BE DISREGARDED IN ASSESSING DIVERSITY

Moreover, even if Legacy has a Florida member, it should not defeat removal since Legacy has no claim as a matter of law and is a clear case of fraudulent joinder. Legacy has not been sued in Florida; it has no contract with ICD; ICD has taken no action against or affecting it;[8] its only alleged damage is derivative economic loss as

---

[8] The Complaint deceptively alleges that ICD sent a letter "to Legacy Insurance's principal business address," Complaint ¶ 26; in fact, the letter was addressed to *Tierney*, who is also associated with that address in his personal capacity. The letter did not mention Legacy at all.

1   the result of the alleged injury to Tierney, loss for which the LLC has no right or

2   standing to assert.

3       "[F]raudulent joinder is a term of art," and it "does not require a finding of

4   fraudulent intent," rather, "the fraudulent joinder inquiry focuses on the validity of the

5   legal theory being asserted…" *Davis v. Prentiss Properties Ltd., Inc.*, 66 F. Supp. 2d

6   1112, 1114 (C.D. Cal. 1999) (quotations omitted).  "There are two ways to establish

7   fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2)

8   inability of the plaintiff to establish a cause of action against the non-diverse party in

9   state court.'" *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th

10  Cir. 2018) (citation omitted).  But "if there is a possibility that a state court would find

11  that the complaint states a cause of action against any of the resident defendants, the

12  federal court must find that the joinder was proper and remand the case to the state

13  court." *Id.* (citation and emphasis omitted).  Accordingly, fraudulent joinder findings

14  have been upheld where the defendant presents "extraordinarily strong evidence or

15  arguments that a plaintiff could not possibly prevail on her claims against the allegedly

16  fraudulently joined defendant." *Id.* at 548.[9]  In any event, courts regularly disregard

17  parties who are not real parties *at all* to the litigation.  "Courts 'must disregard nominal

18  or formal parties and rest jurisdiction only upon the citizenship of real parties to the

19  controversy.'" *Bates v. Mortgage Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080

20

---

21  [9] Although fraudulent joinder usually arises when a plaintiff fraudulently joins

22  defendants, whereas here the plaintiff (Tierney) has fraudulently joined another
    plaintiff (Legacy), the analysis is the same. *See Lighting Sci. Group Corp. v.*

23  *Koninklijke Philips Elecs. N.V.*, 624 F. Supp. 2d 1174, 1183 (E.D. Cal. 2008) (noting
    that "few courts appear to have addressed the application of the fraudulent joinder rule

24  to allegedly improper plaintiffs," but that "Those that have, however, apply the rule to
    plaintiffs in the same manner as it is applied against defendants."); *Taco Bell Corp. v.*

25  *Dairy Farmers of Am., Inc.*, 727 F. Supp. 2d 604, 607 (W.D. Ky. 2010) ("The primary
    purpose of fraudulent joinder is to ensure that plaintiffs do not avoid diversity

26  jurisdiction by pleading illegitimate claims involving non-diverse parties…. That
    purpose is fulfilled both where the plaintiff improperly sues non-diverse defendants

27  against whom it has no viable claim and where the plaintiff joins additional non-diverse
    plaintiffs who have no viable claims."); *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp.

28  2d 390, 396 (S.D.W. Va. 2004) ("The Court can see no logic in prohibiting plaintiffs
    from defeating diversity jurisdiction by fraudulently joining nondiverse defendants, but
    allowing them to do so through fraudulently joining nondiverse plaintiffs.").

1   (9th Cir. 2012) (quoting *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct.

2   1779, 64 L.Ed.2d 425 (1980)).

3        This Court should not consider Legacy's citizenship for diversity purposes

4   because it is merely a nominal plaintiff added solely for the purpose of attempting to

5   destroy diversity.  All of the alleged wrongful conduct by ICD pertains to *Tierney*, not

6   Legacy.  *Tierney*, not Legacy, is a party to the contract at the core of this dispute.  This

7   is clear because Legacy would have no claim at all against ICD were it bringing its suit

8   without Tierney.  In short, there is no "possibility that a state court would find that the

9   complaint states a cause of action" by Legacy against ICD.  *Grancare*, 889 F.3d at 548

10  (quotation and emphasis omitted).  Worse yet, not only does Legacy have no viable

11  claims, Tierney immediately sought a temporary restraining order in state court upon

12  filing their action.  Even though Legacy's claims are meritless, the state court would

13  have no ability or occasion to make that determination before adjudicating the TRO.

14  Legacy's joinder was thus a flagrant attempt to obtain rapid initial adjudication of

15  Tierney's claim in a state court before that court could properly dismiss Legacy as a

16  nominal party, thus making complete diversity indisputable.

17       All of Legacy's claims are plainly derivative of injury to Tierney, and fail.  In

18  Count I for "Declaratory Relief," Tierney seeks a declaratory relief regarding the

19  Independent Agent Agreement, a contract to which he is party that he signed on January

20  4, 2016.  D.E. 1-1 at 16.  Legacy is not a party; indeed, Legacy did not come into

21  existence until 2019.  D.E. 10-1 at ¶¶ 17-18.  Generally, "someone who is not a party

22  to the contract has no standing to enforce it or to recover extra-contractual damages for

23  the wrongful withholding of benefits to the contracting party." *Jones v. Aetna Cas. &*

24  *Sur. Co.*, 33 Cal. Rptr. 2d 291, 294 (Ct. App. 1994); *Burlison v. Allstate Ins. Co.*,

25  CV124092GHKMRWX, 2012 WL 12884683, at *6 (C.D. Cal. Sept. 25, 2012),

26  adhered to, CV124092GHKMRWX, 2013 WL 12125434 (C.D. Cal. Feb. 1, 2013)

27  (noting that in order seek a declaration of rights under a contract, party "must have

28  standing to sue on the contract to assert" the declaratory claim).  Thus in *D. Cummins*

1  *Corp. v. United States Fid. & Guar. Co.*, 201 Cal. Rptr. 3d 585, 593 (Ct. App. 2016),

2  the court squarely rejected the contention that a non-party to a contract had standing to

3  sue for a declaratory judgment concerning the contract.  The court found that that the

4  entity, like Legacy, did not have more than "indirect interest" in the contract.  *Id.* at

5  592.  Likewise, in *Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225, 234 (Ct.

6  App. 2007), as modified (Apr. 24, 2007), the court "readily conclude[d]

7  that an individual who was not a party to any relevant contract and had no direct interest

8  in the contract had no standing to seek declaratory relief.  The individual was a

9  shareholder of the corporate parties who were related to the contract, and stood, like

10  Legacy, to suffer some indirect loss depending on the construction of the contract, but

11  such indirect injury does not confer standing.  *See also Lafferty v. Wells Fargo Bank*,

12  153 Cal. Rptr. 3d 240, 258 (Ct. App. 2013), as modified on denial of reh'g (Feb. 27,

13  2013) ("Because the dealer agreement was not made for the benefit of the Laffertys,

14  they lack standing to seek declaratory and injunctive relief under that agreement.");

15  *Burlison v. Allstate Ins. Co.*, CV124092GHKMRWX, 2012 WL 12884683, at *6 (C.D.

16  Cal. Sept. 25, 2012), adhered to, CV124092GHKMRWX, 2013 WL 12125434 (C.D.

17  Cal. Feb. 1, 2013) ("Plaintiff does not have standing to reform the State Farm Policy

18  because she was not a party to it or a beneficiary of it. She also does not have standing

19  to assert a claim for a declaration of her rights in the Policy.").

20       Likewise, in Count II, for violations of California's Unfair Competition Law

21  ("UCL"), Legacy asserts no independent injury or basis to bring a claim; its injury is

22  entirely derivative of the injury that ICD's conduct is allegedly causing Beeman.  Thus

23  courts have noted that "Recovery based *on a derivative loss* and an assignment of rights

24  would contravene the statutory intent only the party personally injured recover under

25  the UCL."  *Shetty v. Kinecta Fed. Credit Union*, B266192, 2017 WL 167518, at *7

26  (Cal. Ct. App. Jan. 17, 2017) (unpublished) (emphasis added); *see also Amalgamated

27  Transit Union, Local 1756, AFL-CIO v. Superior Cour*t, 46 Cal. 4th 993, 1002, 209

28  P.3d 937, 943 (2009) (noting that "a private action under that law [must] be brought

1  exclusively by a 'person who has suffered injury in fact and has lost money or property

2  as a result of the unfair competition.'") (quotation omitted); *Drazan v. Atl. Mut. Ins.*

3  *Co.*, C 10-01371 SI, 2010 WL 2629576, at *3 (N.D. Cal. June 29, 2010) (finding that

4  plaintiffs lacked UCL standing where they a "are not suing based upon their own

5  claims").

6       Count III, for common law unfair competition, suffers from these same defects:

7  Legacy points to no conduct by ICD directed at itself, only conduct directed to Tierney.

8  Moreover, common law unfair competition has no bearing to the alleged facts.  "The

9  common law tort of unfair competition is generally thought to be synonymous with the

10  act of 'passing off' one's goods as those of another ... [, or] acts analogous to 'passing

11  off,' such as the sale of confusingly similar products, by which a person exploits a

12  competitor's reputation in the market."  *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16

13  F. Supp. 3d 1123, 1138 (S.D. Cal. 2014) (quotation omitted). Thus in *Oracle Corp. v.*

14  *DrugLogic, Inc.*, C 11-00910 JCS, 2011 WL 5576267, at *12 (N.D. Cal. Nov. 16, 2011)

15  the court agreed that "under common law, 'unfair competition' is limited to passing

16  off."  Legacy makes no allegation that ICD passed off any of Legacy's goods as its

17  own, or anything remotely similar.

18  **IV.    THERE IS NO OCCASION FOR EXTRAORDINARY EX PARTE**
19  **RELIEF**

20       Because, as explained above, this Court does not lack subject matter jurisdiction

21  based on the current record, which presents factual disputes concerning Legacy's

22  citizenship that discovery is needed to resolve, ex parte treatment is wholly improper.

23       The "opportunities for legitimate *ex parte* applications are extremely limited."

24  *In re Intermagnetics America, Inc.,* 101 B.R. 191, 193 (C.D.Cal.1989). See also

25  *Mission Power Engineering Co. v. Continental Casualty Co.,* 883 F.Supp. 488, 492

26  (C.D.Cal.1995) (stating that to be proper, an *ex parte* application must demonstrate that

27  there is good cause to allow the moving party to "go to the head of the line in front of

28  all other litigants and receive special treatment"). As the court in *Intermagnetics* stated:

 [E]x parte applications contravene the structure and spirit of the Federal Rules of Civil Procedure and the Local Rules of this court. Both contemplate that *noticed motions should be the rule and not the exception*. Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes. *Ex parte applications throw the system out of whack*. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel *who are required to make a hurried response under pressure, usually for no good reason*. They demand priority consideration, where *such consideration is seldom deserved*. In effect, they put the applicant 'ahead of the pack,' *without cause or justification*.

*In re Intermagnetics Am., Inc.,* 101 B.R. 191, 193 (C.D. Cal. 1989) (footnote omitted) (emphasis added).

To justify ex parte relief, a party must show two things: "First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). The first factor is determined by looking to the merits of the motion with a sliding scale based on the severity of the harm. *Id.*

Here, Plaintiff has not shown that it will suffer irreparable harm if its motion is heard on the schedule that applies to a regularly noticed motion. Moreover, Plaintiffs' alleged injuries could be compensated by money damages. Furthermore, Plaintiff is not "without fault in creating" this situation; underlying this entire dispute is Tierney's tortious conduct that is currently being adjudicated in Florida court where Tierney had the opportunity to, but did not, seek relief. Plaintiff also created the current issue by refusing the limited discovery Defendants requested.

Plaintiffs' cited cases do not support this request for *ex parte* relief and are easily distinguishable: each of those cases turned on motions where, unlike here, there was no factual dispute the court's subject matter jurisdiction.

1    Unlike *Parsapour v. Rushmore Loan Mgmt. Services, LLC*, 2018 WL 3154989,
2    at *3 (C.D. Cal. June 26, 2018), the citizenship of the parties is unclear and the
3    existence of irreparable harm is dubious. In *Parsapour,* citizenship of the parties was
4    clear-Plaintiff was a citizen of California, and Defendant-LLCs' members were
5    California residents. *Id.* at *4. Citizenship in *Parsapour* was an issue easily addressed
6    by the Court because the plaintiff, unlike the instant matter, attached all documents
7    relevant to the determination, and the citizenship of the members was readily
8    ascertainable. *Id.* Further, plaintiff was going to lose his home in foreclosure on a date
9    certain, which is a clear and specific irreparable harm not in the same universe as
10   Tierney's undefined, non-specific, and unsubstantiated allegations of financial harm
11   from inability to continue his tortious conduct.

12   Similarly, in *Soules v. Farmersonly.com*, 2016 WL 10966409, at *1-2, it was not
13   controverted that the court lacked subject matter jurisdiction because the plaintiff filed
14   a stipulation that the amount of damages being sought was under the amount-in-
15   controversy requirement. *Federal Nat. Mortg. Ass'n v. Bravo*, 2013 WL 210198 at *1
16   (C.D. Cal. Jan. 17, 2013) and U.S. *Bank Nat. Ass'n v. Gutierrez Hernandez*, 2010 WL
17   4054451, *2 (C.D. Cal. Oct. 14, 2010) were remanded due to the absence of federal
18   question jurisdiction, an issue for ready determination by the Court, which is readily
19   distinguishable from this case where discovery is needed to determine disputed facts
20   concerning the citizenship of the parties.

21   **A.           Plaintiffs have not shown irreparable harm.**

22   To warrant the *extremely limited* relief available under the *ex parte* process,
23   Plaintiffs must allege much more than their strong desire to be back in state court. Their
24   only stated basis for irreparable harm is their contention that Legacy risks going out of
25   business and the inability to pay its 23 employees and independent contractors.  By
26   Tierney's own allegations, he prepared his company to be able to pay its employees for
27   the next few months with "forgivable loans from the SBA[.]" D.E. 10-1 at 29 ¶ 26.  Far
28   from the strong showing of irreparable harm needed to "throw the system out of

whack," Tierney has made broad, unsupported, generalized allegations of financial harm directly attributable to his own tortious conduct. *See McCutcheon v. Wells Fargo Bank NA*, No. CV120439GAFMRWX, 2012 WL 12882419, at *1 (C.D. Cal. Sept. 5, 2012) ("Plaintiffs' ex parte application is **DENIED** because they *have not demonstrated that they would be likely to suffer irreparable harm* in the absence of preliminary relief, and because it is *currently unclear* whether the Court has subject matter jurisdiction over this case.") (emphasis added).

Plaintiffs cite no case for the proposition that remaining in federal court while this Court adjudicates disputed facts concerning its subject matter jurisdiction constitutes irreparable harm, but that is the only outcome that Plaintiffs' ex parte application seeks to avoid.

## B.      Tierney is Not without Fault

Importantly, Tierney is not without fault in bringing about this purported crisis in his business. It is his own tortious conduct underlying this dispute, a dispute that is currently being adjudicated in Florida state court. As noted above, more than a month ago ICD's counsel sent Tierney a letter in a pre-suit attempt to resolve this matter, Tierney did not respond. Tierney could have responded to the letter. In the absence of a response, ICD filed suit in Florida court, the appropriate forum based on the forum selection clause in the contract, *see* D.E. 1-1 at 26; Tierney could have sought expeditious relief in that court. Tierney also could have made himself and Beeman available for a deposition several days ago, when ICD's counsel requested one in order to resolve disputed facts concerning subject matter jurisdiction.

Now Tierney wants the Court and the parties to rush to attend an emergency of his own making. *See In re Intermagnetics America, Inc.*, 101 B.R. at 193 ("Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have. ...").  If Tierney would cease the gamesmanship and participate in the litigation on the merits, the parties can obtain a final determination of their rights and obligations under the operative agreements and move on. Instead,

Tierney wants to continue his tortious conduct and yank ICD into court across the country while wasting judicial and party resources in improper emergency motion practice.

## **<u>CONCLUSION</u>**

For the foregoing reasons, ICD respectfully requests that the Court deny Plaintiffs' request for ex parte relief; deny Plaintiffs' request for fees; and hold Plaintiffs' motion to remand in abeyance pending limited discovery concerning Legacy's citizenship as set forth above, or alternatively deny Plaintiffs' motion for remand on the grounds that Legacy is fraudulently joined.

DATED:  May 8, 2020                    Respectfully submitted,

                                       **BOIES SCHILLER FLEXNER LLP**

                                       By: _/s/ Edward Takashima_

                                       EDWARD H. TAKASHIMA, State Bar No.
                                       270945
                                           _etakashima@bsfllp.com_
                                       **BOIES SCHILLER FLEXNER LLP**
                                       401 Wilshire Blvd, Suite 850
                                       Santa Monica, CA 90401
                                       Telephone: (310) 752-2400
                                       Facsimile:  (310) 752-2490

                                       Counsel for Defendants ABS HEALTHCARE
                                       SERVICES, LLC and
                                       HEALTH OPTION ONE, LLC