EDWARD H. TAKASHIMA, State Bar No. 270945
  *etakashima@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
Telephone: (310) 752-2400
Facsimile:  (310) 752-2490

Counsel for Defendants
ABS HEALTHCARE SERVICES, LLC and
HEALTH OPTION ONE, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LEGACY INSURANCE SOLUTIONS LLC, a California limited liability company, and BRADLEY TIERNEY an individual, | Case No. 2:20-cv-04097-DSF-JEM |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| ABS HEALTHCARE SERVICES, LLC, a Florida limited liability company, and HEALTH OPTION ONE, LLC, a Florida limited liability company, and DOES I through 20, inclusive, | *[Declaration of Christa Rapoport and Proposed Order filed concurrently herewith]* |
| Defendants. | The Honorable Dale S. Fischer |
| | Date:              June 15, 2020 |
| | Time:             1:30 pm |
| | Courtroom:    7D |
| | Removal Filed: May 4, 2020 |
| | State Court Filing: April 23, 2020 |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 15, 2020, at 1:30 pm, or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Dale S. Fischer, located in First Street Courthouse, 350 West 1st Street, Courtroom 7D, Los Angeles, California, Defendants ABS HEALTHCARE SERVICES, LLC and HEALTH OPTION ONE, LLC will and hereby does move this Court to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), for lack of personal jurisdiction over Defendants and for failure to state a claim upon which relief may be granted.

This Motion is made upon the following grounds:

The action should be dismissed for lack of personal jurisdiction because: (1) Plaintiffs cannot establish specific jurisdiction over Defendants because the allegations in this lawsuit do not arise out of contacts between Defendants and California; and (2) Defendants are not headquartered in California, do not have their principal places of business in California, and do not have any similarly pervasive contacts with California so as to permit the exercise of general personal jurisdiction. Therefore, this case should be dismissed for lack of personal jurisdiction.

In addition, this action should be dismissed for failure to state a claim because: (1) Plaintiffs fail to state a claim for common law unfair competition; (2) Legacy Insurance Solutions LLC ("Legacy") fails to state any claim because any injury alleged belongs to Tierney, and any harm to Legacy is merely derivative.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 15, 2020.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Christa Rapoport, and exhibits thereto, filed concurrently herewith, all of the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and

1  any further argument or evidence that may be received by the Court at the hearing.

2

3  DATED:  May 15, 2020                Respectfully submitted,

4                                      **BOIES SCHILLER FLEXNER LLP**

5
                                       By:  */s/ Edward H. Takashima*
6                                      EDWARD H. TAKASHIMA
7                                      Counsel for Defendants
                                       ABS HEALTHCARE SERVICES, LLC and
8                                      HEALTH OPTION ONE, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2   **I.     INTRODUCTION** .................................................................................1

3   **II.    FACTS AND BACKGROUND** ...........................................................2

4       A.     ICD is a Florida-based Business..................................................2

5       B.     ICD Has No Contacts with California...........................................2

6
7       C.     The Agreement with Tierney Was Executed in Florida.............................3

8       D.     After Tierney Breached and ICD first filed suit in Florida, Tierney
               filed this Duplicative Action in California ...................................5

9
10  **III.   LEGAL ARGUMENT** ............................................................................8

11      A.     ICD Is Not Subject to Personal Jurisdiction in California ...........................8

12          1.   Plaintiffs' Jurisdictional Allegations........................................8

13          2.   This Court Lacks General Jurisdiction Because the Defendants Are
                 Not "at Home" in California ....................................................9

14
15          3.   This Court Lacks Specific Jurisdiction Under all Three  Prongs of
                 the Analysis ...........................................................................11

16
17              a.   By seeking to enforce the terms of the Florida Agreement,
                     Defendants did not purposefully direct their activities
18                   toward California or avail themselves of the privilege of
                     conducting activities in California............................................11
19
20              i. Defendants' letter re: breach of the Agreement was not
                   "purposeful availment" of the privilege of conducting
21                 business in California .............................................................12

22              ii. Defendants' enforcement of the Agreement was not
                    purposeful direction toward California ..................................14
23
24              b.   Plaintiffs' claims do not arise out of or relate to the
                     Defendants' forum-related activities. ...................................17
25
26              c.   Under the facts of this case, the exercise of jurisdiction
                     fails to  comport with traditional notions of fair play and
27                   substantial  justice.................................................................18

28

B.   Several Of Plaintiffs' Causes Of Action Fail To State A Claim On Which Relief Can Be Granted ...................................................... 20

1.   Plaintiffs Fail to State a Claim for Common Law Unfair Competition .......................................................................... 21

2.   Legacy Fails to State Any Claim Because Its Alleged Injury Is Derivative of Tierney's ...................................................... 22

IV.   **CONCLUSION** ........................................................................ 24

Case No. 2:20-cv-04097-DSF-JEM

DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6)

# TABLE OF AUTHORITIES

**Cases**

*Academy of Motion Picture Arts and Sciences v. Benson*,
    15 Cal.2d 685 P.2d 650 (1940) ................................................................21

*Amalgamated Transit Union, Local 1756,*
    *AFL-CIO v. Superior Cour*t, 46 Cal. 4th 993 P.3d 937 (2009)................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................20, 22

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017)................................................8, 11, 15, 17

*Bank of the West v. Superior Court*,
    2 Cal.4th 1254, 10 Cal.Rptr.2d 538 P.2d 545 (1992)................................22

*Bristol-Myers Squibb Co. v. Superior Court*,
    —— U.S. ——, 137 S. Ct. 1773 (2017) ................................................17

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................13, 17

*Burlison v. Allstate Ins. Co.*,
    CV124092GHKMRWX, 2012 WL 12884683 (C.D. Cal. Sept. 25, 2012) .......22, 23

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
    16 F. Supp. 3d 1123 (S.D. Cal. 2014) ................................................21

*Cf. Barton v. Sewell*,
    CV-06-109-FVS, 2008 WL 2725505 (E.D. Wash. July 11, 2008).........................19

*Cf. Renaissance Cruises, Inc. v. Glassman*,
    738 So. 2d 436 (Fla. 4th DCA 1999) ................................................19

*D. Cummins Corp. v. United States Fid. & Guar. Co.*,
    201 Cal. Rptr. 3d 585 (Ct. App. 2016)................................................22

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ................................................................9, 10

*David L. v. Superior Court*,
   29 Cal.App.5th 359 Cal.Rptr.3d 462 (2018) .......................................................15

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002).......................................................................18, 20

*Drazan v. Atl. Mut. Ins. Co.*,
   C 10-01371 SI, 2010 WL 2629576 (N.D. Cal. June 29, 2010)..............................24

*Fabricant v. Goldwater Bank, N.A.*,
   2019 WL 6898946 (C.D. Cal., July 16, 2019) ...........................................10, 12, 16

*Fladeboe v. Am. Isuzu Motors Inc.*,
   58 Cal. Rptr. 3d 225 (Ct. App. 2007).................................................................23

*Goodyear Dunlop Tires Operations S.A. v. Brown*,
   564 U.S. 915 (2011) .............................................................................................9

*Graco Minnesota Inc. v. PF Brands, Inc.*,
   No. 18-CV-1690-WQH-AGS, 2019 WL 1746580 (S.D. Cal. Apr. 17, 2019) ........16

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ...........................................................................................12

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
   810 F. Supp. 2d 1013 (C.D. Cal. 2011)...............................................................21

*Inmar Rx Solutions, Inc. v. Devos, Ltd.*,
   786 Fed. Appx. 445 (5th Cir. 2019) ..............................................................13, 14

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .............................................................................................8

*Jones v. Aetna Cas. & Sur. Co.*,
   33 Cal. Rptr. 2d 291 (Ct. App. 1994)..................................................................22

*King v. American Family Mut. Ins. Co.*,
   632 F.3d 570 (9th Cir. 2011) ..............................................................................11

*Lafferty v. Wells Fargo Bank*,
   153 Cal. Rptr. 3d 240 (Ct. App. 2013).................................................................23

-iv-

*Mattel, Inc. v. MGA Entm't, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011)........................................................21

*Michael Grecco Productions, Inc. v. NetEase, Inc.*,
   2018 WL 6443082 (C.D. Cal., Sept. 24, 2018)......................................11

*Miller v. S & S Hay Co.*,
   No. 1:12–CV–01796–LJO, 2013 WL 3212494 (E.D. Cal. June 24, 2013)............14

*Oracle Corp. v. DrugLogic, Inc.*,
   C 11-00910 JCS, 2011 WL 5576267 (N.D. Cal. Nov. 16, 2011).........................22

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015).............................................12, 13, 14, 16

*Private Reserve Fin., LLC v. Borenstein*,
   2014 WL 2208944 (W.D. Wash. May 28, 2014)....................................19

*Shetty v. Kinecta Fed. Credit Union*,
   B266192, 2017 WL 167518 (Cal. Ct. App. Jan. 17, 2017)......................23

*Snowney v. Harrah's Entm't, Inc.*,
   35 Cal. 4th 1054 P.3d 28 (2005) ........................................................11

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir.1997)..........................................................21

*Vons Companies, Inc. v. Seabest Foods, Inc.*
   14 Cal.4th 434 Cal.Rptr.2d 899, 926 P.2d 1085 (Cal. 1996)....................8

*Walden v. Fiore*,
   571 U.S. 277 (2014) ...............................................................passim

*Williams v. Yamaha Motor Co. Ltd.*,
   851 F.3d 1015 (9th Cir. 2017)..........................................................10

**Statutes**

Code Civ. Proc., § 410.10...................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(2) ..................................................................................1

Fed. R. Civ. P. 12(b)(6) ..................................................................................1

**Miscellaneous**

www.insurancedirect.com ...............................................................................3

Case No. 2:20-cv-04097-DSF-JEM

DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6)

Defendants ABS Healthcare Services, LLC ("ABS") and Health Option One, LLC ("Health Option"), doing business as Insurance Care Direct, (collectively, "ICD"[1]) move to dismiss the complaint of Plaintiffs Bradley Tierney ("Tierney") and Legacy Insurance Solutions LLC ("Legacy") (together, the "Plaintiffs"): (i) pursuant Fed. R. Civ. P. 12(b)(2) and the Due Process Clause of the United States Constitution; and (ii) pursuant to Fed. R. Civ. P. 12(b)(6), because the complaint fails to state a claim upon which relief can be granted[2].

# I.    INTRODUCTION

This action—which Plaintiffs concede duplicates a previously-filed action pending in Florida—arises from a contract between Tierney and ICD that was executed in Florida, that is governed by Florida law, that provides for a Florida venue, and that has absolutely no connection to California.  Except one: the fact that Tierney chose to later move here, where he breached his agreement with ICD and now claims his business has been negatively impacted by ICD's enforcement of its remedies.  This fact pattern is not remotely sufficient to haul a non-resident into California's courts.

ICD is a Florida company that markets and sells insurance-related products from Florida.  It does not target or focus its activities at California; its products are sold to residents in dozens of states.  Its contract with Tierney—which is what gives rise to this action—does not in the least touch or focus upon California, much less constitute the type of substantial contact necessary to invoke long arm jurisdiction.  It is beyond dispute that Tierney's decision to move to California is immaterial when

---

[1] For ease of reference, when a statement applies equally to both ABS and Health Option we write in the singular and use the term ICD. In all other instances, we refer to ABS or Health Option, as appropriate.

[2] ICD is also filing today a motion to dismiss for forum *non conveniens* or, alternatively, to transfer to pursuant to 28 U.S.C. § 1404(a).

1  determining whether this Court may exercise jurisdiction over ICD.  Yet, Plaintiffs'

2  attempt to sue ICD in California is essentially wholly-predicated on that fact.  This

3  action must be dismissed for lack of personal jurisdiction over the Defendants.

4         Legacy's claims must be dismissed for the further reason that it has no standing

5  to seek a declaration as to a contract to which it is not a party.  Nor has Legacy

6  suffered damages.  Its claim for damages boils down to the fact that its owner,

7  Tierney, is allegedly suffering damages.  But that type of derivative injury is not

8  cognizable.  Finally, Plaintiffs' claims for common law unfair competition must also

9  be dismissed because there is no allegation of the type of "passing off" conduct to

10  which that claim is limited.

11  **II.    FACTS AND BACKGROUND**

12         **A.    ICD is a Florida-based Business**

13         The Defendants are limited liability companies organized under the laws of

14  Florida and headquartered in Deerfield Beach, Broward County, Florida. (Declaration

15  of Christa Rapoport at ¶4 (hereinafter "Rapoport Decl.")). The Defendants do

16  business as ICD. (*Id.*)  The business is family-owned and was established in Florida

17  in 2001. (*Id.*) Each of the Defendants is owned by three LLC members, none of

18  whom is a resident of California. (*Id.*)

19         ICD is a health and life insurance general agency. (Rapoport Decl. ¶5.) ICD

20  holds a resident insurance agent license issued by the Florida Department of Financial

21  Services. (*Id.*) ICD has never held a resident insurance agent license in any state other

22  than Florida. (*Id.*)  The only business license held by ICD in California is a

23  "nonresident" insurance agent license. (*Id.* ¶6.)  ICD has no offices or employees in

24  California. (Rapoport Decl. ¶6.) ICD neither owns nor leases any real estate in

25  California and has no bank accounts in California. (*Id.*)

26         **B.    ICD Has No Contacts with California**

27

28

1    ICD procures tailored insurance benefits, products, and services ("ICD Plans")

2    for individuals and members of associations (the "Associations"). (Rapoport Decl. 7.)

3    ICD does not market or sell ICD plans directly to consumers in California or

4    anywhere else. (*Id.* ¶7.) ICD enters into contracts with, among others, independent

5    insurance agents ("Independent Agents") who market and sell the ICD Plans

6    throughout the country. (*Id.* ¶8.) ICD maintains a website (www.insurancedirect.com)

7    that is directed to Independent Agents, not consumers. The website is available to,

8    and accessible from, any location in the United States (and, in fact, almost throughout

9    the world). (*Id.* ¶8.) It is not directed to California, in particular, and provides no

10   information unique or tailored to California or its residents. (*Id.* ¶8.)

11   ICD facilitates access to lead generation vendors who provide Independent

12   Agents with "leads." (Rapoport Decl. ¶9.)  A "lead" is information about a consumer

13   who has consented to be contacted and has indicated that he or she is shopping for

14   insurance. (*Id.*) Leads exist in every state in the United States. (*Id.*)  ICD is not aware

15   of any lead generation that is focused on the potential customer's state of residence.

16   (Rapoport Decl. ¶10.) ICD acquires leads in bulk, which includes leads from any

17   number of states. (*Id.*)  From ICD's perspective, if the bulk acquisition includes a

18   "California" lead, it is a purely random occurrence. (*Id.*)

19   The Independent Agents coordinate the prospective customer's purchase of the

20   ICD Plan. (Rapoport Decl. ¶11.)  Upon the customer's purchase of the ICD Plan, he

21   or she becomes an insured of the insurance carrier under the ICD Plan. (Rapoport

22   Decl. ¶12.)  ICD is not the insurance carrier. (*Id.*)  In sum, ICD does no business

23   directly in California; nor does it focus or direct its business activities toward

24   California. (Rapoport Decl. ¶13.)

25   **C.     The Agreement with Tierney Was Executed in Florida**

26

27

28
DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6)

Tierney entered into an ICD Agent or Agency of Record Agreement with ICD dated January 4, 2016. (Rapoport Decl. ¶ 14.)[3]  All parties to the agreement, including Tierney, negotiated and signed the Agreement in Florida. (*Id.*) Tierney was a Florida resident at the time he negotiated and signed the Florida Agreement. (*Id.*) (Decl. of B. Tierney at ¶ 3, ¶ 14.[4])  After he entered into the ICD Exclusive Agent Agreement Tierney continued to reside in and work in Florida until he moved to California in 2017. (Rapoport Decl. ¶15); (Decl. of B. Tierney at ¶ 3, ¶ 14.)

Pursuant to his ICD Agent or Agency of Record Agreement, Tierney was authorized to solicit customers only for the ICD Plans. (Rapoport Decl. ¶16). The agreement permitted Tierney to use ICD's confidential and trade secret information only in connection with the marketing and sale of ICD Plans. (*Id.*)  And the agreement prohibited Tierney from inducing ICD's customers or prospective customers to discontinue doing business with ICD. (*Id.*)  These restrictions were not California-centric.  They applied everywhere in the United States and were not directed specifically to California.

A review of Florida public records reveals that, since at least 2015, and on a continuous basis through the present day, Tierney has held an active license, issued by the Florida Department of Financial Services, to transact business as an insurance agent in the State of Florida. (Rapoport Decl. ¶ 17). These same records reveal that Tierney currently holds a Class 8-40 Non-Resident Health Agent License issued by

_____

[3] A true and correct copy of the executed version of the ICD Agent or Agency of Record Agreement is attached to the plaintiff's complaint as Exhibit A and to the Rapoport Declaration as Ex. A.

[4] "Tierney Decl." refers to the Declaration of Brad Tierney dated May 3, 2020 and filed by Plaintiffs on May 4, 2020 in Support of their "Application for Temporary Restraining Order and for Order to Show Cause Why a Preliminary Injunction Should not be Issued." (DE. 10-1 at 25).

the State of Florida. (*Id.*) Pursuant to this active Florida license, Tierney currently holds active appointments with the following insurance carriers:  (i) United States Fire Insurance Company; and (ii) Unified Life Insurance Company. (*Id.*) These Florida appointments are valid through, and do not expire until, July 31, 2022. (*Id.*)

The ICD Agent or Agency of Record Agreement provides in clear and unambiguous language that Florida law governs the "Agreement and the relationship of the parties"; that in the negotiation, execution and performance of the agreement, Tierney purposely availed himself of the benefits of the laws of Florida; and that venue for "any dispute arising out of related to the inception of performance" of the agreement "shall lie in Broward County, Florida." (Rapoport Decl. ¶ 18) (Exclusive Agency Agreement, Section XV.)  The provision provides in full:

> This Agreement and the relationship of the parties shall be governed by the laws of the State of Florida applicable to agreements executed and performed within the State of Florida and without giving effect to any statutes or rules relating to the conflict of laws. The Parties agree and acknowledge that in the negotiating and executing of this agreement and in the performance of this Agreement, they are purposefully availing themselves of the benefits and laws of the state of Florida as to any dispute arising out of or related to the inception or performance of this Agreement. The Parties hereby waive their right to contest the exercise of personal   jurisdiction over them in the State of Florida. ***The Parties further agree that venue shall lie in Broward County, Florida.*** ICD may pursue its equitable remedies, including specific performance, injunctions and restraining orders in any court of competent jurisdiction.

(Rapoport Decl. Ex. A; ICD Exclusive Agent Agreement at § XV(A)(emphasis added)).

### D.   After Tierney Breached and ICD first filed suit in Florida, Tierney filed this Duplicative Action in California

In 2019, Tierney created a California limited liability company, Legacy Insurance LLC ("Legacy"). (Rapoport Decl. ¶ 19.) In violation of his ICD Exclusive Agent Agreement, Tierney, through Legacy, competes with ICD by selling, "as a sub-

-5-

agency on behalf of an insurance agency named Kratos Investments, LLC . . . ,
association memberships in the National Congress of Employers ('NCE') Association
and connected limited benefit health insurance plans." (Decl. of B. Tierney at ¶¶ 17-
19.)  Even prior to his formation of Legacy, Tierney violated his covenants under the
ICD Exclusive Agreement. (Rapoport Decl. ¶ 19.)

ICD's only communication with Tierney in California was a cease and desist
letter sent through Florida counsel on April 4, 2020, as provided under the ICD
Exclusive Agent Agreement. (Rapoport Decl. ¶ 21; Rapoport Decl. Ex. C.) In fact,
that is the only instance identified by Plaintiffs where ICD so much as sent a letter to
California.  (Compl. at ¶ 26.)  That letter notified Tierney that he was in breach of the
Agreement he signed and performed in Florida. (*Id.*) Tierney did not respond, forcing
ICD to file suit. (*Id.*)

On April 22, 2020, consistent with the venue provision in the ICD Agent or
Agency of Record Agreement, ICD filed an action in Florida against Tierney alleging
numerous violations of the agreement and Florida law (the "Florida Action.")
(Rapoport Decl. ¶ 21; Rapoport Decl. Ex. D.). The Florida Action is one of ten
similar actions currently pending in Broward County or Miami-Dade County, Florida.
(*Id.*[5]). Each of these Florida actions alleges a broader scheme by Tierney and others
to steal ICD's business. (*Id.*; Rapoport Decl. Ex. D; Florida Compl. ¶ 30.)

Rather than respond to the complaint in the first-filed Florida Action, Tierney
ignored his agreement as to venue, ran into California state court, and filed the
California Action. One need look no further than paragraph 2 of the complaint in the
California action to know that it is duplicative of the first-filed Florida action: "it
seeks to resolve an actual controversy regarding ***the rights and obligations of the***

---

[5] A list of these actions is attached as Rapoport Decl. Ex. E.

*parties* relating to, and arising out of" ICD Agent or Agency of Record Agreement, **which was executed in Florida** long before Tierney moved to California.[6] (Compl. at ¶ 2 (emphasis added).)  That, of course, is the very agreement upon which ICD first sued in Florida.

The only basis for Tierney's assertion of jurisdiction is the fact that ICD's exercise of its rights under the ICD Agent or Agency of Record Agreement is allegedly causing him injury in California, the place to which he chose to move after executing the agreement.  (*Id*. ¶ 31) ("Those terms [of the agreement] that are invalid and overly broad, however, are hindering Tierney's ability to engage in his chosen profession, trade, or business in violation of California law and any other allegedly applicable state law.")  But the fact that Tierney chose to move to California, and, consequently, is alleging he is being injured in California, is not relevant to the

---

[6] In a move rich with irony, Plaintiffs have asked this Court to enjoin ICD's prosecution of the first-filed Florida action. (*See* Complaint Prayer for Relief at ¶ C; Plaintiffs' Ex Parte Motion at p. 3 (seeking an injunction forbidding ICD from "taking any action, other that in this [California] court".)  In seeking that relief, Tierney admits that his California action is duplicative of this action: throughout his filings in California, Tierney repeatedly advises the California court that ICD "filed a duplicative action in Florida." (*Id.* at p. 2.) Moreover, Plaintiffs do not simply seek to avoid the agreement's venue provision; they also seek to avoid the agreement's choice of law provision, which states clearly that "[t]his Agreement and the relationship of the parties shall be governed by the laws of the State of Florida applicable to agreements executed and performed within the State of Florida and without giving effect to any statutes or rules relating to the conflict of laws." (Rapoport Decl. Ex. A; ICD Exclusive Agent Agreement at § XV(A)). Tierney thus seeks a declaration that "the restrictive covenants are invalid under California Law and in violation of California's Unfair Competition Law"; that "the Non-Compete Obligations in Section 4 of the Addendum, the Non-Solicitation Obligations, and the Confidentiality Obligations "are Void and in violation of California's Unfair Competition Law." D.E. 10-1 at 8.

jurisdictional inquiry, which centers on ICD's—and not Tierney's—contacts with California.

## III.   LEGAL ARGUMENT

### A.   **ICD Is Not Subject to Personal Jurisdiction in California**

"California courts may exercise personal jurisdiction on any basis consistent with the Constitution of California and the United States." (Code Civ. Proc., § 410.10) "Accordingly, the jurisdictional analyses under California state law and federal due process are the same." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017) (internal quote omitted).

The Fourteenth Amendment's Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its court." *Walden v. Fiore,* 571 U.S. 277, 283 (2014). These limits to a state's adjudicative power "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* at 284. A nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

"Personal jurisdiction may be either general or specific." *Vons Companies, Inc. v. Seabest Foods, Inc.* 14 Cal.4th 434, 445, 58 Cal.Rptr.2d 899, 926 P.2d 1085 (Cal. 1996). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g*., domicile)." *Walden*, 571 U.S. at 283 fn. 6. Specific or "'case-linked'" jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–284 & fn. 6. In particular, for specific jurisdiction to attach, "the defendant's *suit-related conduct* must create a substantial connection with the forum state." *Id.* at 287 (emphasis added).

#### 1.   **Plaintiffs' Jurisdictional Allegations**

-8-

Plaintiffs' jurisdictional allegations are set out in a single sentence in the complaint: "The Court has personal jurisdiction over Defendants and subject matter jurisdiction over this case." (Compl. ¶12.)  Plaintiffs do not say whether they assert general or specific jurisdiction, or both.  The only connections between ICD and California that Plaintiffs allege are that: (a) each defendant is "a Florida limited liability company that is licensed by the State of California to solicit insurance business in this state and which in fact does solicit insurance business in this state," (*id*. ¶¶ 9-10); (b) "[o]n information and belief, both Defendants have customers and prospective customers in Los Angeles, County and Defendants in part are seeking to preclude Defendants [sic] from contacting any of those customers (and even non-customers) in Los Angeles, County," (*id*. ¶ 11); and (c) ICD sent to Tierney in California a notice letter under the ICD Agent or Agency of Record Agreement, (*id*. at ¶26).   Those facts do not even state a *prima facie* case for the exercise of personal jurisdiction over ICD.

## 2. This Court Lacks General Jurisdiction Because the Defendants Are Not "at Home" in California

To support the exercise of general jurisdiction, a defendant's forum contacts must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). The U.S. Supreme Court has identified "domicile, place of incorporation, and principal place of business as paradigm bases for the exercise of general jurisdiction." *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011) (internal quotes omitted.)  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* "The general jurisdiction inquiry examines a corporation's activities worldwide—not just the extent of its contacts in the forum state—to determine where it can be rightly

DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6)

considered at home." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021-22 (9th Cir. 2017) (while evidence showed that "the California market may be important" to defendant, it failed to establish that defendant "is 'at home' in California.").

Plaintiffs' allegations fall woefully short of establishing general jurisdiction. Defendants are not incorporated in California and do not have their principal place of business in California. (Rapaport Decl. ¶ 4.)  ICD has never held a resident insurance agent license in California, or, for that matter, in any state other than Florida. (*Id.* ¶ 4.)  Defendants have no offices, no employees, and no bank accounts in California. (*Id.* ¶ 6.) Defendants neither own nor lease real property in California. (*Id.*) To the extent ICD Plans are sold to California residents, they are sold the same way they are sold in every state:  through Independent Agents whose only relationship with ICD is an agreement like the one signed by Plaintiff Tierney. (*Id.* ¶ 8.)  ICD facilitates the acquisition of leads by Independent Agents. The leads are obtained in bulk, so that the existence of a "California lead" in the bulk acquisition is, from ICD's perspective, a random event. (*Id.* ¶ 9.)

Plaintiffs' allegation that "both Defendants have customers and prospective customers in Los Angeles County" simply fails to establish that the Defendants are "'at home' in California." *Williams*, 851 F.3d at 1021-22 (9th Cir. 2017).  In *Daimler*, the Supreme Court "rejected a theory that would permit 'the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business.'" *Williams*, 851 F.3d 1021 (quoting *Daimler* at 760–61.) Here, ICD does no business in California, making the exercise of general long arm jurisdiction unconstitutional. *See Fabricant v. Goldwater Bank, N.A.,* 2019 WL 6898946, at *1-*2 (C.D. Cal., July 16, 2019) (Fischer, J.) (finding no specific jurisdiction based on defendants' "selling [lead] information that included

-10-

DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6)

information about people located in California" and noting that defendant was not "directing those sales activities towards California.").

### 3.   This Court Lacks Specific Jurisdiction Under all Three Prongs of the Analysis

"The Ninth Circuit employs a three-part effects test to determine whether a court has specific jurisdiction over a defendant: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Michael Grecco Productions, Inc. v. NetEase, Inc*., 2018 WL 6443082, at *2 (C.D. Cal., Sept. 24, 2018) (Fischer, J.) (internal quotation omitted); *see also Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).  Only if the plaintiff makes the initial showing on the first two requirements does the burden shift to the defendant to show that exercising jurisdiction would be constitutionally unreasonable. *Id.* at 1068–69; *see also Snowney v. Harrah's Entm't, Inc.*, 35 Cal. 4th 1054, 1062, 112 P.3d 28, 32 (2005) (same).  "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *King v. American Family Mut. Ins. Co*., 632 F.3d 570 (9th Cir. 2011) (internal quotation omitted).

### a.   By seeking to enforce the terms of the Florida Agreement, Defendants did not purposefully direct their activities toward California or avail themselves of the privilege of conducting activities in California

The only California activity upon which Plaintiffs rely for jurisdiction is ICD's demand that Tierney comply with the obligations of the ICD Agent or Agency of

-11-

Record Agreement that the parties executed in Florida, under which he served as agent of record in Florida, and that is expressly governed by Florida law. (Compl. ¶38) ("Defendants have created an actual and justiciable controversy between Plaintiffs and Defendants by threatening legal action against Plaintiffs as a result of Tierney selling insurance."). This alleged threat of legal action distills down to the April 4, 2020 cease and desist letter that Defendants' counsel sent to Tierney in California pursuant to the terms of the agreement. (Compl. ¶ 26; Rapaport Decl. ¶ 20.) The sending of this letter to Tierney in California—where he apparently has chosen to reside after executing and breaching his agreement—does not constitute the purposeful direction of activity required to meet the first prong of the analysis.

Two different analyses apply to Plaintiffs' claims. "For claims sounding in contract, [courts in the Ninth Circuit] generally apply a 'purposeful availment' analysis and ask whether a defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Picot v. Weston,* 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, (1958)). "For claims sounding in tort, [courts] instead apply a '"purposeful direction"' test and look to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot,* 780 F.3d at 1212. 802–03. Here, "[w]hether you view the … complaint as sounding in contract or tort, these facts are insufficient under *Walden* to establish personal jurisdiction in California." *Fabricant,* 2019 WL 6898946, at *2 (Fischer, J.).

            **i.**    **Defendants' letter re: breach of the Agreement was not "purposeful availment" of the privilege of conducting business in California**

All parties to the ICD Agent or Agency of Record Agreement, including Tierney, negotiated and signed the agreement in Florida. (Rapoport Decl. ¶ 14);

-12-

(Decl. of B. Tierney at ¶ 3, ¶ 14.)  After he entered into the agreement in 2016, Tierney continued to reside and work in Florida until he moved to California in 2017. (Rapoport Decl. ¶ 15); (Decl. of B. Tierney at ¶ 3, ¶ 14.)  Pursuant to the agreement, Tierney was authorized to solicit customers only for the ICD Plans. (Rapoport Decl. ¶ 16.)  The agreement permitted Tierney to use ICD's confidential and trade secret information only in connection with the marketing and sale of ICD Plans. (*Id*.)  And the agreement prohibited Tierney from inducing ICD's customers or prospective customers to discontinue doing business with ICD. (*Id*.)  These restrictions applied to anywhere in the United States and were not directed specifically to California. Indeed, a review of Florida public records reveals that, since at least 2015, and on a continuous basis through the present day, Tierney has held an active license, issued by the Florida Department of Financial Services, to transact business as an insurance agent in the State of Florida. (Rapoport Decl. ¶17.)

Tierney was not sued specifically because he violated his agreement in California.  He was sued because he violated his agreement—period.  And even if he had been a California resident at the time he signed the agreement—which he was not—jurisdiction would be lacking.  *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *see also Picot,* 780 F.3d at 1212 ("[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum.") (internal quote omitted).

The court in *Inmar Rx Solutions, Inc. v. Devos, Ltd.*, 786 Fed. Appx. 445 (5th Cir. 2019), faced an analogous situation involving a salesman, Roeten, who was subject to a restrictive covenant that he signed with his former employer (GRx) in New York. When Roeten went to work for a competitor (Inmar), a company headquartered in Texas, GRx sent a cease and desist letter to Roeten and his new

DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6)

employer in Texas threatening to enforce the covenant. Roeten and Inmar, like Tierney and Legacy here, responded by filing a declaratory judgment action in Texas. The district court dismissed the suit for lack of personal jurisdiction, and the Fifth Circuit affirmed:

> GRx did not purposely avail itself of the benefits and protections of Texas by sending a letter to Inmar's counsel in Texas demanding that it terminate Roeten's employment. … While GRx was engaged in commercial activity in the forum …, GRx's letter … ***was the result of a non-resident defendant attempting to demand compliance with a restriction that would have applied no matter where the plaintiff was located across the country.***

*Inmar*, 786 Fed.Appx. at 450-51 (emphasis added).

ICD's notice that Tierney had violated the restrictions in the ICD Agent or Agency of Record Agreement (which applies in Florida) was sent to California for only one reason: Tierney has chosen to relocate here.  ICD has done nothing to "purposefully" avail itself of the privilege of conducting business in California. *See Picot*, 780 F.3d at 1212 (plaintiffs' residency in California irrelevant under specific jurisdiction inquiry where "the agreement was formed in Michigan, where [defendant] lived, where it was understood [defendant] would perform majority of his work, and where [defendant] did indeed discharge most of his contractual duties.").

### ii.   Defendants' enforcement of the Agreement was not purposeful direction toward California

Courts in the Ninth Circuit require a showing of purposeful direction for claims brought pursuant to the UCL. *See, e.g.*, *Miller v. S & S Hay Co.*, No. 1:12–CV–01796–LJO, 2013 WL 3212494, at *2 (E.D. Cal. June 24, 2013). While courts in the Ninth Circuit apply a three-part "effects" test to determine "purposeful direction," both the Ninth Circuit and California courts have recognized that, since the Supreme

1  Court's decision in *Walden,* the "targeting" alleged by plaintiffs here is

2  constitutionally insufficient to establish purposeful direction:

> In *Walden*, the Supreme Court rejected [the Ninth Circuit's]
> conclusion that the defendants' "knowledge of [the plaintiffs']
> 'strong forum connections,' " plus the "foreseeable harm" the
> plaintiffs suffered in the forum, comprised sufficient minimum
> contacts. 134 S. Ct. at 1124–25 (citation omitted). The Court found
> that our approach "impermissibly allow[ed] a plaintiff's contacts
> with the defendant and forum to drive the jurisdictional analysis."
> *Id.* at 1125. The Court made clear that we must look to the
> defendant's "own contacts" with the forum, not to the defendant's
> knowledge of a plaintiff's connections to a forum. *Id.* at 1124–25.

10  *Axiom*, 874 F.3d at 1069-70 (quoting *Walden*.)

11      Accordingly, the *Axiom* court held that "a theory of individualized targeting . . .

12  will not, on its own, support the exercise of specific jurisdiction, absent compliance

13  with what *Walden* requires." *Id.* at 1070. In other words, "[e]ven if a defendant has

14  individually targeted conduct at a plaintiff he knows resides in the forum state,

15  specific jurisdiction now lies under the Ninth Circuit's effects test *only* if his suit-

16  related conduct creates a *substantial connection* with that state." *David L. v. Superior*

17  *Court,* 29 Cal.App.5th 359, 373, 240 Cal.Rptr.3d 462 (2018) (discussing *Axiom*).

18      Here, the only reason the cease and desist letter was sent to Tierney in

19  California was because that is where he—by his own choosing—has relocated.

20  Tierney's choice of California as his home does not support jurisdiction over ICD.  If

21  that were the case, ICD would be subject to the jurisdiction of any state to which

22  Tierney moves. Put another way, jurisdiction over ICD would be determined not by

23  ICD's actions, but by Tierney and his choice of residence.  That is not the law.

24      As explained in *Walden,* "[t]he inquiry whether a State may assert specific

25  jurisdiction over a nonresident defendant focuses on 'the relationship among the

26  defendant, the forum, and the litigation,' and "for a State to exercise jurisdiction

27  consistent with due process, the defendant's suit-related conduct must create a

28

-15-

1  substantial connection with the forum State." *Walden*, 571 U.S. 283-84.  ICD's

2  sending of a letter enforcing its contractual rights against a person who happens to

3  live in California is plainly not the "substantial connection" required for specific

4  jurisdiction.

5      What Tierney really complains about is that, because he chose to move to

6  California, that is where his new business is being affected. (Compl. at ¶ 31.)  But the

7  place where a plaintiff claims to have suffered its injury is not relevant to the analysis

8  of long arm jurisdiction over the defendant.  The Supreme Court has made clear that

9  "mere injury to a forum resident is not sufficient connection to the forum." *Walden*,

10  571 U.S. 289-290.  Instead, the analysis focuses on the defendant's activities in the

11  forum state. *Id*. at 285 ("We have consistently rejected attempts to satisfy the

12  defendant-focused 'minimum contacts' inquiry by demonstrating contacts between

13  the plaintiff (or third parties) and the forum State.").

14      Here, ICD would have acted no differently if Tierney, instead of moving from

15  Florida to California, had moved to Colorado or Connecticut.  "A plaintiff does not

16  show express aiming by alleging injuries that are 'entirely personal to him and would

17  follow him wherever he might choose to live or travel' and 'not tethered to California

18  in any meaningful way.'" *Graco Minnesota Inc. v. PF Brands, Inc.*, No. 18-CV-

19  1690-WQH-AGS, 2019 WL 1746580, at *4 (S.D. Cal. Apr. 17, 2019) (quoting *Picot*,

20  780 F.3d 1206, 1215 (9th Cir. 2015).)[7]

21      As this Court has recognized, if personal jurisdiction over ICD were to be

22  exercised, it must be based on "contacts that defendant ***himself*** creates in the forum

23  state." *Fabricant*, 2019 WL 6898946, at *1 (Fischer, J.) (internal quotations

24  omitted).  Plaintiffs' only attempt to show contacts between ICD and California

25  (rather than just with Tierney) comes down to the allegation that "On information and

26

27  _____

[7] In fact, the conspiracy alleged by ICD involves almost exclusively Florida residents.

28                                     -16-

belief, both ***Defendants have customers and prospective customers in Los Angeles, County*** and Defendants in part are seeking to preclude Defendants (sic) from contacting any of those customers (and even non-customers) in Los Angeles, County." (*Id.* ¶ 11 (emphasis added).)  But the fact that ICD has customers in California, even if true, ignores that "the Court's 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. 284.

As explained in the Rapoport Declaration, the leads that lead generation vendors provide to Independent Agents come from all over the country. (Rapoport Decl. ¶ 9.)  ICD is unaware of any lead generation vendors focused on the potential customer's state of residence. (*Id.* ¶ 10.)  If a bulk acquisition includes leads from California it is, from Defendants' standpoint, a random occurrence. (*Id.*)  A defendant's "'random, fortuitous, or attenuated' contacts" with residents of the forum state will not suffice to establish jurisdiction. *Walden*, 134 S. Ct. at 1123 (quoting *Burger King Corp.,* 471 U.S. at 475; *see also Axiom,* 874 F.3d at 1070 ("we focus on 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there'") (quoting *Walden*, 134 S. Ct. at 1122).

### b.   Plaintiffs' claims do not arise out of or relate to the Defendants' forum-related activities.

The second prong of the Due Process test for specific jurisdiction requires that the claim arise out of or relate to the defendant's forum-related activities. *Axiom*, 874 F.3d at 1068.  As discussed above, ICD has scant, if any, contact with California. ICD's contacts with California, particularly as they do not relate to Tierney, are irrelevant to the analysis.  *Bristol-Myers Squibb Co. v. Superior Court*, —— U.S. —— , 137 S. Ct. 1773, 1781 (2017) ("[S]pecific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.").  Tierney's claims thus do not "arise" from any substantial contact between ICD and California.

Indeed, it is clear by their own pleading that Plaintiffs' claims do not "arise out of or relate to defendant's forum-related activities." Rather, the claims are all bottomed on a request for a declaration "regarding the rights and obligations of the parties *relating to, and arising from Defendants' Independent Agent or Agency of Record Agreement."*) (Compl. ¶ 2) (emphasis added)). That agreement was executed in Florida, and it is expressly governed by Florida law. (Rapoport Decl. ¶ 14.) Tierney resided in Florida, worked in Florida, and was licensed in Florida while serving in Florida under the agreement. (*Id.* ¶ 14, ¶ 15, ¶ 17.)

ICD's only activity relating to the agreement thus occurred in Florida. And that is what matters in the jurisdictional analysis—not that Tierney chose to violate his agreement while he is living in California. Put another way, this action does not arise from ICD's notice letter to Tierney. It arises from ICD's contract with Tierney, which involved no California contact, much less the required substantial contact. And while Plaintiffs can only point to ICD's letter to Tierney in California, (*id.* at ¶26), the fact remains that the sending of that letter to California, insubstantial a contact as it was, was dictated by Tierney's decision to move here. And that decision cannot be the basis to impose jurisdiction over ICD.

        c.    **Under the facts of this case, the exercise of jurisdiction fails to comport with traditional notions of fair play and substantial justice.**

Finally, in analyzing the third factor, reasonableness, this court considers seven different factors. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002) (listing factors). Although the Court need not reach this prong of the test, each of these factors supports the conclusion that there is no personal jurisdiction over ICD.

*First*, as to "the extent of the defendants' purposeful injection into the forum state's affairs," it has already been demonstrated that ICD neither purposefully

-18-

1    availed itself of the benefits of conducting business in California, nor purposefully

2    directed any wrongful conduct toward California. (Part III.A.3.a., *supra.*)

3         *Second*, as for "the burden on the defendant of defending in the forum,"

4    litigating this action in California would be a significant burden on ICD.  ICD's entire

5    physical presence is in Florida; its offices are located in Florida, and all of its

6    employees are located in Florida.  All of its relevant witnesses are located in Florida.

7    It is approximately 2,700 miles from ICD's offices in Fort Lauderdale, Florida to Los

8    Angeles, California.  *Cf. Barton v. Sewell*, CV-06-109-FVS, 2008 WL 2725505, at *1

9    (E.D. Wash. July 11, 2008), aff'd, 383 Fed. Appx. 690 (9th Cir. 2010) (noting that

10   where Oregon defendants included a small company, "[t]hey will be burdened by

11   having to defend themselves in this forum," which in that case was significantly

12   closer to the Defendants than ICD is to California).  Further, "Where burdens of

13   litigating between the two states are equal, this factor tips in favor of the defendant,

14   because the limit of personal jurisdiction is primarily concerned with the defendant's

15   burden."  *Private Reserve Fin., LLC v. Borenstein*, 2014 WL 2208944, at *4 (W.D.

16   Wash. May 28, 2014).

17        *Third* and *fourth*, as to "the extent of conflict with the sovereignty of the

18   defendant's state" and "the forum state's interest in adjudicating the dispute,"

19   litigating in California would create a significant conflict with Florida's sovereignty

20   while minimally imposing on California' sovereignty.  The agreement at the center of

21   the dispute contains both a Florida forum selection clause and a Florida choice-of-law

22   clause. (D.E. 1-1 at 26 ¶ XV.A.)  Florida has a significant interest in interpreting its

23   own law, interpreting contracts governed by Florida law, and in adjudicating

24   contracts that agree to Florida as the proper venue.  *Cf. Renaissance Cruises, Inc. v.*

25   *Glassman*, 738 So. 2d 436, 438 (Fla. 4th DCA 1999) (noting "Florida's interest in

26   applying its law to adjudicate the dispute which involved a business principally

27   located in Florida").

28

*Fifth*, as to "the most efficient judicial resolution of the controversy," this factor again favors litigation in Florida, given that there is already an action proceeding in Florida to which Tierney is a party and to which Tierney has submitted to the court's jurisdiction (because he agreed in his contract that he would not contest the Court's jurisdiction). *See* D.E. 15-2, D.E. 22-1. Further, Defendants' offices and witnesses are located in Florida.

*Sixth*, as to "the importance of the forum to the plaintiff's interest in convenient and effective relief," California is minimally important to Plaintiffs' interest and relief, because Tierney has already agreed to litigate this dispute in Florida and under Florida law. Regardless, "in this circuit, the plaintiff's convenience is not of paramount importance." *Dole*, 303 F.3d at 1116.

*Seventh*, as to "the existence of an alternative forum," a court of general jurisdiction in Florida is plainly an adequate alternative forum; indeed, the dispute is already actually being litigated there. (Rapoport Decl. Ex. D.)

In sum, all of these factors make clear that Plaintiffs cannot establish personal jurisdiction over ICD.

## B.   Several Of Plaintiffs' Causes Of Action Fail To State A Claim On Which Relief Can Be Granted

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is

-20-

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### 1.    Plaintiffs Fail to State a Claim for Common Law Unfair Competition

In Count III, Plaintiffs bring a claim for common law unfair competition to "declare that Defendants' act of requiring Tierney and similarly situated independent insurance agents, to sign the Independent Agency Agreement as a condition of Defendants continuing their business relationship with agencies with whom the independent agent has a relationship constitutes unfair competition in violation of California's common law." D.E. 1-1 ¶ 53.  They further allege that "It constitutes common law unfair competition for Defendants to require independent agents, such as Tierney, to sign an agreement containing facially invalid or overly broad restrictive covenants." *Id.* ¶ 54.

These allegations do not remotely resemble a claim for common law unfair competition.  "The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another ... [, or] acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market." *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1123, 1138 (S.D. Cal. 2014) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir.1997)). "The decisive test of common law unfair competition is whether the public is likely to be deceived about the source of goods or services by the defendant's conduct." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1032 (C.D. Cal. 2011), aff'd, 738 F.3d 1085 (9th Cir. 2013) (citing *Academy of Motion Picture Arts and Sciences v. Benson*, 15 Cal.2d 685, 690, 104 P.2d 650 (1940)).  "The cornerstone of a claim for common law unfair competition is 'fraud ... practiced by one in securing the trade of a rival dealer.'" *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1013 (C.D. Cal. 2011).  Thus in

-21-

1  *Oracle Corp. v. DrugLogic, Inc.*, C 11-00910 JCS, 2011 WL 5576267, at *12 (N.D.
2  Cal. Nov. 16, 2011) the court agreed that "under common law, 'unfair competition' is
3  limited to passing off." *Id.* (citing *Bank of the West v. Superior Court*, 2 Cal.4th 1254,
4  10 Cal.Rptr.2d 538, 833 P.2d 545 (1992)).

5      Legacy makes no allegation that ICD passed off any of Legacy's goods as its
6  own, engaged in any fraud in order to deceive anyone into thinking that Legacy's goods
7  were its own, or anything remotely similar. Because the Complaint wholly fails to state
8  a claim for common law unfair competition, it should be dismissed.

9      **2.    Legacy Fails to State Any Claim Because Its Alleged Injury Is**
10         **Derivative of Tierney's**

11      Legacy is merely a nominal plaintiff that has not alleged that it suffered any
12  injury separate and apart from Tierney. All of the alleged wrongful conduct by ICD
13  pertains to *Tierney*, not Legacy. *Tierney*, not Legacy, is a party to the contract at the
14  core of this dispute. In short, Legacy cannot and does not "state a claim to relief that
15  is plausible on its face.'" *Iqbal*, 556 U.S. at 678.

16      In Count I for "Declaratory Relief," Tierney seeks a declaratory relief regarding
17  the Independent Agent Agreement, a contract to which he is party that he signed on
18  January 4, 2016. D.E. 1-1 at 16. Legacy is not a party to the contract. *Id.* Generally,
19  "someone who is not a party to the contract has no standing to enforce it or to recover
20  extra-contractual damages for the wrongful withholding of benefits to the contracting
21  party." *Jones v. Aetna Cas. & Sur. Co.*, 33 Cal. Rptr. 2d 291, 294 (Ct. App. 1994);
22  *Burlison v. Allstate Ins. Co.*, CV124092GHKMRWX, 2012 WL 12884683, at *6 (C.D.
23  Cal. Sept. 25, 2012), adhered to, CV124092GHKMRWX, 2013 WL 12125434 (C.D.
24  Cal. Feb. 1, 2013) (noting that in order seek a declaration of rights under a contract,
25  party "must have standing to sue on the contract to assert" the declaratory claim). Thus
26  in *D. Cummins Corp. v. United States Fid. & Guar. Co.*, 201 Cal. Rptr. 3d 585, 593
27  (Ct. App. 2016), the court squarely rejected the contention that a non-party to a contract
28

-22-

had standing to sue for a declaratory judgment concerning the contract.  The court found that that the entity, like Legacy, did not have more than "indirect interest" in the contract.  *Id.* at 592.

Likewise, in *Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225, 234 (Ct. App. 2007), as modified (Apr. 24, 2007), the court "readily conclude[d] that an individual who was not a party to any relevant contract and had no direct interest in the contract had no standing to seek declaratory relief.  The individual was a shareholder of the corporate parties who were related to the contract, and stood, like Legacy, to suffer some indirect loss depending on the construction of the contract, but such indirect injury does not confer standing.  *See also Lafferty v. Wells Fargo Bank*, 153 Cal. Rptr. 3d 240, 258 (Ct. App. 2013), as modified on denial of reh'g (Feb. 27, 2013) ("Because the dealer agreement was not made for the benefit of the Laffertys, they lack standing to seek declaratory and injunctive relief under that agreement."); *Burlison v. Allstate Ins. Co.*, CV124092GHKMRWX, 2012 WL 12884683, at *6 (C.D. Cal. Sept. 25, 2012), adhered to, CV124092GHKMRWX, 2013 WL 12125434 (C.D. Cal. Feb. 1, 2013) ("Plaintiff does not have standing to reform the State Farm Policy because she was not a party to it or a beneficiary of it. She also does not have standing to assert a claim for a declaration of her rights in the Policy.").  Accordingly, Legacy cannot state a claim for relief for a declaration concerning a contract to which it is not a party and has no standing to enforce.

Likewise, in Count II, for violations of California's Unfair Competition Law ("UCL"), Legacy asserts no independent injury or basis to bring a claim; its injury is entirely derivative of the injury that ICD's conduct is allegedly causing Beeman.  Thus courts have noted that "Recovery based *on a derivative loss* and an assignment of rights would contravene the statutory intent only the party personally injured recover under the UCL."  *Shetty v. Kinecta Fed. Credit Union*, B266192, 2017 WL 167518, at *7 (Cal. Ct. App. Jan. 17, 2017) (unpublished) (emphasis added); *see also Amalgamated*

-23-

1  *Transit Union, Local 1756, AFL-CIO v. Superior Cour*t, 46 Cal. 4th 993, 1002, 209

2  P.3d 937, 943 (2009) (noting that "a private action under that law [must] be brought

3  exclusively by a 'person who has suffered injury in fact and has lost money or property

4  as a result of the unfair competition.'") (quotation omitted); *Drazan v. Atl. Mut. Ins.*

5  *Co.*, C 10-01371 SI, 2010 WL 2629576, at *3 (N.D. Cal. June 29, 2010) (finding that

6  plaintiffs lacked UCL standing where they "are not suing based upon their own

7  claims").

8       Count III, for common law unfair competition, suffers from these same defects:

9  Legacy points to no conduct by ICD directed at itself, only conduct directed to

10  Tierney.  And, as explained above, Legacy wholly fails to state a claim for common

11  law unfair competition.

12  **IV.    CONCLUSION**

13       For the foregoing reasons, ICD respectfully requests that Plaintiffs' complaint

14  be dismissed.

15

16  DATED:  May 15, 2020              Respectfully submitted,

17                                   **BOIES SCHILLER FLEXNER LLP**

18                                   By:  _/s/ Edward H. Takashima_

19  _____

20                                   EDWARD H. TAKASHIMA,
                                     State Bar No. 270945

21                                        *etakashima@bsfllp.com*
                                     **BOIES SCHILLER FLEXNER LLP**

22                                   401 Wilshire Blvd, Suite 850
                                     Santa Monica, CA 90401

23                                   Telephone: (310) 752-2400
                                     Facsimile:  (310) 752-2490

24                                   Counsel for Defendants

25                                   ABS HEALTHCARE SERVICES, LLC and
                                     HEALTH OPTION ONE, LLC

26

27

28
                                     -24-