DAVID BOIES (Admitted *Pro Hac Vice*)
  *dboies@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8201
Facsimile:  (914) 749-8300

EDWARD H. TAKASHIMA, State Bar No. 270945
  *etakashima@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017
Telephone: (213) 629-9040
Facsimile:  (213) 629-9022

Counsel for Defendant ABS HEALTHCARE SERVICES, LLC and
HEALTH OPTION ONE, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LEGACY INSURANCE SOLUTIONS LLC, a California limited liability company, and BRADLEY TIERNEY an individual,<br><br>            Plaintiffs,<br><br>    v.<br><br>ABS HEALTHCARE SERVICES, LLC, a Florida limited liability company, and HEALTH OPTION ONE, LLC, a Florida limited liability company, and DOES I through 20, inclusive,<br><br>            Defendants. | Case No. 2:20-cv-04097-DSF-JEM<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ........................................................................................................4

I.   PLAINTIFFS HAVE NOT SHOWN, AND CANNOT SHOW, BEEMAN IS
     A MEMBER OF LEGACY ..........................................................................5

     A.   The Documentary Evidence ..................................................................5

     B.   The Testimony of Beeman and Tierney..................................................6

     C.   Moreover, Plaintiffs Have Refused to Meaningfully Participate in Court-
          Ordered Jurisdictional Discovery..........................................................8

II.  LEGACY IS A SHAM PLAINTIFF AND MUST BE DISMISSED FROM
     THIS ACTION ............................................................................................9

     A.   Legacy's Citizenship Must Be Disregarded Because It Was Fraudulently
          Joined ..................................................................................................11

     B.   Legacy Was Fraudulently Joined Because It Has No Possibility of
          Success on Its Claims and Is Merely a Nominal Plaintiff .....................13

          1.   Legacy Has No Possibility of Success on Count I for Breach of
               Contract......................................................................................14

          2.   Legacy Has No Possibility of Success on Count II for UCL
               Violations....................................................................................16

          3.   Legacy Has No Possibility of Success on Count III for Common ...
               Law Unfair Competition...............................................................17

CONCLUSION....................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**<u>Cases</u>**

*Academy of Motion Picture Arts and Sciences v. Benson*,
   15 Cal.2d 685, 104 P.2d 650 (1940) ........................................................17

*Allstate Ins. Co. v. Hughes*,
   358 F.3d 1089 (9th Cir. 2004)...................................................................13

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*,
   46 Cal. 4th 993, 209 P.3d 937 (2009) .....................................................16

*Bates v. Mortgage Elec. Registration Sys., Inc.*,
   694 F.3d 1076 (9th Cir. 2012) ..................................................................13

*Burlison v. Allstate Ins. Co.*,
   CV124092GHKMRWX, 2012 WL 12884683 (C.D. Cal. Sept. 25, 2012)
   *adhered to*, CV124092GHKMRWX, 2013 WL 12125434
   (C.D. Cal. Feb. 1, 2013) ....................................................................14, 15

*Caouette v. Bristol-Myers Squibb Co., C-12-1814 EMC*,
   2012 WL 3283858 (N.D. Cal. Aug. 10, 2012)..........................................12

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
   16 F. Supp. 3d 1123 (S.D. Cal. 2014) ......................................................18

*D. Cummins Corp. v. United States Fid. & Guar. Co.*,
   201 Cal. Rptr. 3d 585 (Ct. App. 2016)...............................................14, 15

*Davis v. Prentiss Properties Ltd., Inc.*,
   66 F. Supp. 2d 1112 (C.D. Cal. 1999)......................................................11

*Drazan v. Atl. Mut. Ins. Co., C*,
   10-01371 SI, 2010 WL 2629576 (N.D. Cal. June 29, 2010) ...................16

*Evans v. Sirius Computer Sols., Inc.*,
   3:12-CV-46-AA, 2012 WL 1557294 (D. Or. May 1, 2012)....................15

*Fladeboe v. Am. Isuzu Motors Inc.*,
   58 Cal. Rptr. 3d 225 (Ct. App. 2007), *as modified* (Apr. 24, 2007) ........14

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

*Forde v. HSBC Bank USA, N.A.*,
 B291582, 2019 WL 6140756 (Cal. Ct. App. Nov. 20, 2019) ................................ 14

*Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp.*,
 14-CV-3073-PJH, 2016 WL 4698931 (N.D. Cal. Sept. 8, 2016) ........................... 16

*Grancare, LLC v. Thrower by & through Mills*,
 889 F.3d 543 (9th Cir. 2018) ................................................................................. 11

*Greene v. Wyeth*,
 344 F. Supp. 2d 674 (D. Nev. 2004) ..................................................................... 12

*Grennell v. W. S. Life Ins. Co.*,
 298 F. Supp. 2d 390 (S.D.W. Va. 2004) ................................................................ 12

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
 810 F. Supp. 2d 1013 (C.D. Cal. 2011) ................................................................. 17

*Jones v. Aetna Cas. & Sur. Co.*,
 33 Cal. Rptr. 2d 291 (Ct. App. 1994) .................................................................... 14

*Lafferty v. Wells Fargo Bank*,
 153 Cal. Rptr. 3d 240 (Ct. App. 2013), *as modified on denial of reh'g*
 (Feb. 27, 2013) ...................................................................................................... 15

*Lighting Sci. Group Corp. v. Koninklijke Philips Elecs. N.V.*,
 624 F. Supp. 2d 1174 (E.D. Cal. 2008) ................................................................. 11

*Mattel, Inc. v. MGA Entm't, Inc.*,
 782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................................... 17

*Navarro Savings Ass'n v. Lee*,
 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ......................................... 13

*Oracle Corp. v. DrugLogic, Inc., C 11-00910 JCS*,
 2011 WL 5576267 (N.D. Cal. Nov. 16, 2011) ....................................................... 18

*Shetty v. Kinecta Fed. Credit Union*,
 B266192, 2017 WL 167518 (Cal. Ct. App. Jan. 17, 2017) ..................................... 16

*Sodibar Sys., Inc. v. Simon*,
 2014 WL 1276441 (D. Md. Mar. 26, 2014) ........................................................... 12

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir.1997) ................................................................. 17

*Sutton v. Davol, Inc.*,
   251 F.R.D. 500 (E.D. Cal. 2008) .......................................................... 13

*Taco Bell Corp. v. Dairy Farmers of Am., Inc.*,
   727 F. Supp. 2d 604 (W.D. Ky. 2010) ................................................... 11

*Tapscott v. MS Dealer Serv. Corp.*,
   77 F.3d 1353 (11th Cir. 1996) .............................................................. 12

**<u>Rules</u>**

Fed. R. Civ. P. 17(a) .................................................................................. 13

Fed. R. Civ. P. 30(c)(2) ............................................................................... 8

Fed. R. Civ. P. 30(d)(3) ............................................................................... 8

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

## **PRELIMINARY STATEMENT**

In 2016 when he was a Florida resident, Plaintiff Bradley Tierney ("Tierney") signed an agreement with Defendants ABS Healthcare Services, LLC and Health Option One, LLC d/b/a/ Insurance Care Direct (collectively, "ICD"). The agreement was signed in Florida, to be performed in Florida, expressly governed by Florida law, with exclusive jurisdiction in the federal and state courts of Florida. Tierney obligated himself to act as ICD's exclusive agent and to preserve the confidentiality of ICD's trade secrets and proprietary information.

On April 4, 2020, ICD served Tierney with a cease and desist notice with respect to violations of that agreement. On April 22, 2020 Defendants filed suit against Tierney in Florida for these violations. On April 23, 2020, Tierney (now a California resident) sued Defendants in California Superior Court seeking to enjoin Defendants' Florida action. Tierney joined as a plaintiff a California LLC, Legacy Insurance Solutions ("Legacy"). Prior to Plaintiffs' lawsuit, ICD never had any agreement or dealings with, or even knowledge of, Legacy; as discussed below, Legacy itself has no claim and was joined solely to attempt to defeat diversity jurisdiction. On May 4, 2020 Defendants, two Florida corporations, removed this case to this Court.

Plaintiffs' May 7, 2020 motion to remand relied on a purported "Operating Agreement" dated March 5, 2016, which listed Adam Beeman, a Florida resident, as a 50% member of Legacy. Beeman's alleged membership was flatly inconsistent with Legacy's official California corporate filings which identified Legacy as a single-member LLC whose single member was Tierney. On May 12, 2020, this Court noted that there "are inconsistencies between the declarations of the purported members of Legacy Insurance Solutions LLC and the relevant documentary evidence", and ordered: "The parties are to cooperate in arranging jurisdictional discovery" (D.E. 18).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1    Plaintiffs have not produced a single contemporaneous document supporting

2    their claim that Beeman was a member of Legacy—not a single corporate filing, tax

3    return, financial statement, trial balance, bank record, organizational chart, capital

4    contribution record, loan application, or insurance regulatory filing.  Plaintiffs admit

5    that Legacy regularly made insurance regulatory filings that required it to list all

6    members with more than 10% ownership and made an SBA Paycheck Protection

7    Program loan application that required it to list all members with more than a 20%

8    ownership interest; none of these documents were produced, and presumably none

9    mention Mr. Beeman.  Mr. Tierney also testified that there was an "Excel spreadsheet"

10   that showed all capital contributions by members, and which supported his claim that

11   Beeman was a member of Legacy (Takashima Dec. ¶ 3, Tierney Dep. Tr. 14:7-18)[1];

12   Plaintiffs again refused to produce that purported spreadsheet.

13       Most strikingly, Plaintiffs now admit that the March 5, 2019 Operating

14   Agreement on which their motion to remand was premised was voided a few weeks

15   later because, they now say, they realized that since Mr. Beeman was a convicted felon

16   it would be undesirable to list him as a member (Takashima Dec. ¶ 8, Beeman Dep. Tr.

17   48: 10-25).  This, of course, explains why all of the filings and forms prepared over the

18   next year omitted any reference to Mr. Beeman—he had ceased to be a member, if in

19   fact he had ever been a member.

20       Plaintiffs, however, were not done in their efforts to support their representation

21   that Beeman was a member of Legacy. Magically, after this action was filed, a

22   purported "Amended Operating Agreement" dated April 15, 2019, appeared—signed

23   by both Tierney and Beeman which purported to reduce Beeman's ownership

24   percentage to 5%, a reduction that Plaintiffs claim explains why Beeman was not listed

25

26   [1] Takashima Dec. refers to the June 22, 2020 Declaration of Edward Takashima,

27   attached hereto.

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1   on certain insurance regulatory and PPP filings (but would not explain his absence from

2   Legacy's official LLC filings or the absence of any other documentation of Beeman's

3   supposed membership).

4       Interestingly, Tierney testified that Beeman received nothing for purportedly

5   reducing his ownership percentage from 50% to 5%. (Takashima Dec. ¶ 3; Tierney

6   Dep. Tr. 34: 12-21).

7       Why, one might reasonably ask, was this April 15, 2019 "Amended Operating

8   Agreement" not relied on in Plaintiffs' Motion to Remand? Why is there no mention

9   of this purported Amended Operating Agreement in either the memoranda submitted

10  by Plaintiffs' counsel to the Court or the sworn declarations submitted by Messrs.

11  Tierney and Beeman asserting that Mr. Beeman was a member of Legacy?  Why did

12  both Plaintiffs' counsel and Messrs.  Tierney and Beeman produce and rely on a March

13  20, 2019 purported "Operating Agreement" even though, they now say, it had ceased

14  to be operative a year earlier?

15      Plaintiffs contend that when the March 5, 2019 Agreement was terminated, it

16  was replaced by this April 15, 2019 revision. However, Plaintiffs have failed to produce

17  any letter, email, or other document transmitting, discussing, or even mentioning their

18  purported April 15, 2019 "Amended Operating Agreement."  Indeed, insofar as

19  Plaintiffs' document production to date indicates there is not a single draft or note,

20  paper or electronic, that reflects the existence or contemplation of this purported

21  "Amended Operating Agreement" during the year between when it was allegedly

22  agreed to and when it conveniently appeared during their litigation to attempt to

23  respond to the "inconsistencies" this Court previously noted. (D.E. 18).

24      The "Amended" agreement, of course could not explain the total absence of any

25  reference to Beeman in Legacy's official California corporate filings and other records.

26  Moreover, at his deposition Tierney admitted that the purported "Amended" agreement

27

28

had actually been prepared, signed, and backdated **after** this litigation began. (Takashima Dec. ¶ 3; Tierney Dep. Tr. 40:7, 36:17-37:22; Takashima Dec. ¶ 8, Beeman Dep. Tr. 9:5-10:14).   There is not a single document referring to this purported "Amended" agreement prior to this Court's May 12, 2020 Order—not a single draft, letter, email, or note.  Plaintiffs have refused Defendants' reasonable request that the originals of these purported "Operating Agreements" be produced for examination by a forensic documents expert.  Takashima Dec. ¶ 4.

Legacy's official public filings remain uncontroverted, and tell the real story— Legacy is a single-member LLC with a California resident, Tierney, as its owner/member. Every LLC is required to file forms with the state of California showing its members.  A member managed LLC, which Legacy is, is required to identify "all" its members.  The only member shown in Legacy's filing is Mr. Tierney.

Defendants respectfully submit that there are two independent grounds to deny Plaintiffs' motion to remand.  First, Plaintiffs have failed to produce any credible evidence that controverts Legacy's official California corporate filings showing Legacy as a single member LLC owned by Tierney.  Second, even if Beeman were a member of Legacy, Legacy has no plausible claim, has been fraudulently joined to attempt to destroy diversity, and must be disregarded.

If the Court believes that Legacy should not be disregarded and that there is a factual issue as to whether Beeman is a member, we respectfully request that the Court order Plaintiffs to make the discovery contemplated by this Court's May 12, 2020 Order and hold an evidentiary hearing to assess the credibility of Tierney and Beeman's conclusory assertions.

## **ARGUMENT**

Remand is inappropriate because there is complete diversity among the parties. Defendants are citizens of Florida.  Plaintiffs Tierney and Legacy are citizens of

California. Alternatively, Legacy should be disregarded as fraudulently joined, or as an otherwise improper party because its purpose in this action is solely to attempt to deprive this Court of jurisdiction and all of Legacy's claims fail as a matter of law.

## I. PLAINTIFFS HAVE NOT SHOWN, AND CANNOT SHOW, BEEMAN IS A MEMBER OF LEGACY

### A. The Documentary Evidence

Following this Court's May 20, 2020 Order, Plaintiffs agreed to produce:

"1.    All documents constituting or concerning (a) any public filing by or on behalf of Legacy Insurance Solutions LLC (hereinafter "Legacy"), (b) who the members or proposed members of Legacy are, (c) any agreement in whole or in part between Legacy and Tierney and/or Beeman, (d) any agreement in whole or in part between Tierney and Beeman.

2.    All versions, draft and final, of the Legacy Operating Agreement and/or Articles of Incorporation, including any Amended or Restated Agreement or articles.

3.    All documents concerning (a) any address or location used by Legacy from 2016 to the present, (b) any address used by Beeman from 2016 to the present, (c) Beeman's travel to and from California from 2016 to the present, (d) any payment or distribution by Legacy to, or for the benefit of, or at the direction of, Beeman, and (e) any payment or contribution by, or on behalf of, Beeman to, or for the benefit of, Legacy." Takashima Dec. ¶¶ 5, 6.

Plaintiffs have produced none of the documents that in the ordinary course of business would show Legacy's members (e.g. minutes of meetings of members, member consents, capital contribution records, insurance regulatory filings, accounting allocations of profits and losses, loan application, leases and lease applications, balance sheets, bank account applications, trial balances, organization charts, tax returns and draft tax returns).  Plaintiffs have not even produced the insurance regulatory filings

1   and loan applications that they admit exist and show Legacy's members, or the "Excel
2   spreadsheet" that Beeman claims shows Legacy's members.

3         The only plausible inference the Court can draw is that all of these documents
4   are inconsistent with Plaintiffs' claim that Beeman is a member of Legacy.

5   **B. <u>The Testimony of Beeman and Tierney</u>**

6         Beeman and Tierney testify that Beeman was a member of Legacy.  However,
7   their testimony is conclusory with no supporting facts or detail, inconsistent with the
8   documentary record, constantly shifting, and insulated from cross-examination by
9   counsel's more than 30 instructions not to answer.

10        For example, Tierney and Beeman have no explanation for why the purported
11  April 15, 2019 agreement was not mentioned in their declarations; no explanation why
12  it was not mentioned in their motion to remand; no explanation for why there is no
13  draft of, and no email or note referencing, the agreement between April 15, 2019, when
14  it was supposedly agreed to, and when it magically appeared after the Court noted
15  "inconsistencies" in Plaintiffs' documents; no explanation for the apparent
16  inconsistency between the purported agreement and Legacy's business records; and no
17  explanation for not producing the Excel spreadsheet that they claim would support
18  Beeman's membership.

19        Moreover, Beeman testified that the money paid "by/through Kratos" was
20  actually not a "capital contribution" as had previously been represented (Takashima
21  Dec. ¶ 7), but a "line of credit" (Takashima Dec. ¶ 8, Beeman Dep. Tr. 18:7-15, 27:18-
22  23, 28:7-11, 38:2-6), which created a "debt" (Takashima Dec. ¶ 8, Beeman Dep. Tr.
23  25:4-8), which Legacy was now repaying (Takashima Dec. ¶ 8, Beeman Dep. Tr.
24  36:12-20. 38:8-15).

25
26
27
28

1    Plaintiffs originally took the position that Beeman had made capital
2    contributions to Legacy and represented that "Beeman contributions were made
3    by/through Kratos" (Kratos being a Beeman company). Takashima Dec. ¶ 8. However,

4        (a)    At Beeman's deposition the witness was repeatedly instructed not
5        to answer questions about those contributions needed to cross-examine
6        these representations (e.g., Takashima Dec. ¶ 8, Beeman Dep. Tr. 29: 12-
7        17; 29:20-30:2; 30:15-19; 35:ll-19;45:22-46:3);

8        (b)    Mr. Beeman was also instructed not to answer questions cross-
9        examining whether he had the money that he claimed he provided to fund
10       Legacy (e.g., Takashima Dec. ¶ 8, Beeman Dep. Tr. 43: 17-23);

11   To justify the Kratos contribution as a capital contribution by Beeman, Beeman
12   testified that the money Kratos had provided to Legacy was "my money" (Takashima
13   Dec. ¶ 8, Beeman Dep. Tr. 27:18-22), my "own personal money" (Takashima Dec. ¶
14   8, Beeman Dep. Tr. 27:23-28:1).   But he was instructed not to answer questions
15   concerning a financial affidavit he had executed in the summer of 2018 that was
16   inconsistent with him having anything close to the $900,000 to $1,000,000 he claimed
17   to have provided. (Takashima Dec. ¶ 8, Beeman Dep. Tr. 23:11-20; 27:18-22; 43:11-
18   23).  Despite previously representing that Beeman had made capital contributions to
19   Legacy "by/through Kratos", at the deposition as it became clear such a position was
20   unsustainable; Plaintiffs' counsel through a series of speaking objections and other
21   remarks tried to recast Beeman's contributions as services, not capital (Takashima Dec.
22   ¶ 8, Beeman Dep. Tr. 22:2-23:1).[2]

---

[2] Plaintiffs' counsel's remarks and speaking objections occur throughout the brief
depositions of Beeman and Tierney.  *See, e.g.*, (Takashima Dec. ¶ 8, Beeman Dep. Tr.
21:4-9, 22:2-23:1, 26:11-13, 28:13-15, 28:22-29:10, 29:16-17, 29:24-30:2, 30:17-19,
31:24-35:9, 35:18-20, 43:14-23, 45:7-17, 45:25-46:3; Takashima Dec. ¶ 3, Tierney

The inconsistent and constantly changing explanation of Plaintiffs and their counsel underscore the difficulty of relying on their conclusory, untested assertions to controvert Legacy's official records.[3]

## C. **Moreover, Plaintiffs Have Refused to Meaningfully Participate in Court-Ordered Jurisdictional Discovery**

In its Order denying Plaintiffs' first *ex parte* motion, the Court ordered the parties "to cooperate in arranging jurisdictional discovery, a hearing date, and briefing schedule for the motion to remand." [D.E. 18]. Plaintiffs have not cooperated—they have obstructed.

Jurisdictional depositions of Tierney and Beeman occurred on May 21, 2020, but 30 times Beeman and Tierney were instructed not to answer questions relevant to this Court's determination of Legacy's citizenship.[4]

As discussed above, Plaintiffs also failed to produce relevant documents, including documents that identified "who the members or proposed members of Legacy are" and documents of "any payment or contribution by, or on behalf of, Beeman to, or for the benefit of, Legacy," even documents like Legacy's PPP application and California regulatory and licensing filings, and the asserted "Excel spreadsheet" that Plaintiffs have testified exists.

---

Dep. Tr. 11:8-13, 12:13-17, 14:25-15:5, 32:7-16, 32:20-33:1, 40:11-13, 46:12-15, 47:10-49:25).

[3] Plaintiffs' counsel now argues that technically no capital contributions may be necessary for someone to be a member of an LLC. That, of course, is not the key point. The key point is that Plaintiffs' explanations are so inconsistent and constantly changing that they wholly lack credibility.

[4] There are limited grounds upon which a deponent may refuse to answer a question during a deposition. *See* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").

As this Court ruled in denying Plaintiffs' third *ex parte* motion in as many weeks, "Plaintiffs have not complied with the Court's prior order and do not appear to have made any serious attempt to resolve the issues raised in the application prior to filing." [D.E. 40] at 2.  The same is true today.

## II.   LEGACY IS A SHAM PLAINTIFF AND MUST BE DISMISSED FROM THIS ACTION

In any event, remand is not appropriate because Legacy is a sham plaintiff added to this action solely in an attempt to defeat diversity jurisdiction.[5]  One need only reach the second paragraph of the Complaint to know this is the case:

> Plaintiffs are seeking to resolve an actual controversy with Defendants *regarding the rights and obligations or the parties relating to, and arising from Defendants' Independent Agent or Agency of Record Agreement* ("Independent Agent Agreement") entered into between Tierney and Defendants.

(Compl. at ¶ 2 (emphasis added).)  There are no contractual rights or obligations as between Legacy and Defendants.  That is because there is no contract between Legacy and Defendants.  Moreover, the Complaint does not even allege that ICD took any action *against Legacy*, or even knew that Legacy existed.  That is because ICD did not.

Demonstrating the lack of basis for any claim by Legacy, Plaintiffs find it necessary to mischaracterize the notice letter sent by Defendants pursuant to the breach of the Agreement.  They assert that the letter was sent "to Tierney's California residence and to Legacy Insurance's principle business address" and "informed Tierney and Legacy Insurance" that the Agreement had been violated.  Complaint ¶ 26.  In fact, the letter was addressed *only to Tierney*, and was sent to him at both his

---

[5] ICD raised this issue in response to Plaintiffs' *ex parte* motion seeking remand of this action.  The Court did not need to reach the issue at that time because the Court agreed that Plaintiffs' inconsistencies mandated jurisdictional discovery.  *See* [D.E. 18].

residential and business addresses.  The letter did not mention Legacy at all.  Plaintiffs' insinuation that ICD sent Legacy a letter concerning the Agreement serves only to emphasize the fact that there is no conduct by ICD directed toward Legacy that could possibly support an action by Legacy against ICD.  To be sure, Legacy's claims are nothing more than an attempt to destroy diversity.

Plaintiffs also fail to include in their Complaint the fact that Tierney's business address (and the purported address of Legacy) is also the address of Tierney's company Maxim, Inc., a California corporation that Plaintiffs acknowledge has been the company through which Tierney has marketed health insurance since sometime in 2017. The official California corporate filings of Maxim state that it does business as Legacy.  Takashima Dec. ¶ 9. What the relationship is of Plaintiff Legacy and Maxim, Inc. doing business as Legacy Health Insurance Solutions, or whether Plaintiff Legacy itself has any role or business at all, is unclear.  What is clear is that if Maxim, Inc. doing business as Legacy Health Insurance Solutions had been the company joined by Tierney as a plaintiff, there would be complete diversity. Perhaps predictably, Plaintiffs' counsel instructed their witnesses not to answer any questions about Maxim, Inc.

Indeed, the Complaint makes clear that ICD took action *only against Tierney* (and not Legacy) by seeking to enforce the contract it entered into with *only Tierney* (and not Legacy) by litigating the matter against *only Tierney* (and not Legacy). Legacy has not been sued in Florida; it has no contract with ICD; and ICD has taken no action against it.  That is why Legacy's only alleged damages are purely derivative economic loss as the result of the alleged injury to Tierney, loss for which the LLC has no right or standing to assert.

Nevertheless, knowing that this action would be removed to federal court, Tierney joined Legacy in an attempt to defeat this Court's jurisdiction.

## A. **Legacy's Citizenship Must Be Disregarded Because It Was Fraudulently Joined**

Because Legacy was fraudulently joined as a plaintiff solely for the purpose of defeating this Court's jurisdiction, it should not be considered in assessing diversity. The Court need not make any factual determinations about the membership of Legacy. It is enough to find that Legacy has no purpose in this action.  The dispute is solely between Tierney and ICD. Any claims by Legacy against ICD are purely derivative, and fail as a matter of law.  This Court's subject matter jurisdiction remains undisturbed because Legacy must be dismissed as fraudulently-joined.

"[F]raudulent joinder is a term of art," and it "does not require a finding of fraudulent intent," rather, "the fraudulent joinder inquiry focuses on the validity of the legal theory being asserted…"  *Davis v. Prentiss Properties Ltd., Inc.*, 66 F. Supp. 2d 1112, 1114 (C.D. Cal. 1999) (quotations omitted).  "There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citation omitted).  Accordingly, fraudulent joinder findings have been upheld where the defendant presents "extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant." *Id.* at 548. *See Lighting Sci. Group Corp. v. Koninklijke Philips Elecs. N.V.*, 624 F. Supp. 2d 1174, 1183 (E.D. Cal. 2008) (noting that Courts that have addressed fraudulently-joined-Plaintiffs "apply the rule to plaintiffs in the same manner as it is applied against defendants.").

"There is no significant difference between fraudulent joinder of plaintiffs and fraudulent joinder of defendants." *Taco Bell Corp. v. Dairy Farmers of Am., Inc.*, 727 F. Supp. 2d 604, 607 (W.D. Ky. 2010).  Courts have applied the doctrine of fraudulent joinder to plaintiffs because "[t]he primary purpose of fraudulent joinder is to ensure

that plaintiffs do not avoid diversity jurisdiction by pleading illegitimate claims involving non-diverse parties…. That purpose is fulfilled both where the plaintiff improperly sues non-diverse defendants against whom it has no viable claim and where the plaintiff joins additional non-diverse plaintiffs who have no viable claims." *Id.*

Similarly, in *Grennell v. W. S. Life Ins. Co.*, the Court found there was "no logic in prohibiting plaintiffs from defeating diversity jurisdiction by fraudulently joining nondiverse defendants, but allowing them to do so through fraudulently joining nondiverse plaintiffs." 298 F. Supp. 2d 390, 396 (S.D.W. Va. 2004). Therefore, the Court found that the fraudulent joinder doctrine "applies both to plaintiffs and defendants." *Id.; see also Sodibar Sys., Inc. v. Simon*, 2014 WL 1276441, at *3 (D. Md. Mar. 26, 2014) ("The [fraudulent joinder] doctrine also applies when a plaintiff includes a non-diverse plaintiff to defeat diversity jurisdiction."); *Caouette v. Bristol-Myers Squibb Co.*, C-12-1814 EMC, 2012 WL 3283858, at *6 (N.D. Cal. Aug. 10, 2012) (applying the doctrine of fraudulent misjoinder to "a plaintiff fraudulently misjoining a nondiverse plaintiff in order to defeat diversity jurisdiction.").

As the Eleventh Circuit held in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000), "Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Accord Caouette*, C-12-1814 EMC, 2012 WL 3283858, at *6-7 (collecting cases); *see also, e.g., Greene v. Wyeth*, 344 F. Supp. 2d 674, 684–85 (D. Nev. 2004) ("Although the Ninth Circuit has not yet published an opinion addressing the fraudulent misjoinder rule, this Court agrees with the Fifth and Eleventh Circuits that the [fraudulent misjoinder] rule is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal

court."); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 504 (E.D. Cal. 2008) (noting that legal argument in favor of applying Tapscott rule was "compelling").

Other courts reach the same conclusion by disregarding parties, including plaintiffs, who are not real parties in interest to litigation. "Courts 'must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'" *Bates v. Mortgage Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 461, 100 S. Ct. 1779, 64 L.Ed.2d 425 (1980)); *see also Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093–94 (9th Cir. 2004) ("Fed. R. Civ. P. 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest. Whether [Allstate] is the real party in interest under Fed. R. Civ. P. 17(a) in this federal diversity suit is depend[e]nt upon whether [Allstate] is a proper party to maintain this action under applicable state law.") There can be little dispute that the "real parties to the controversy" here are ICD and Tierney. That is why, in Tierney's own words, this action seeks relief "regarding the rights and obligations of the parties" "relating to, and arising from" the Agreement between ICD and Tierney. Compl. at ¶ 2.

## B. Legacy Was Fraudulently Joined Because It Has No Possibility of Success on Its Claims and Is Merely a Nominal Plaintiff

Regardless of the theory or framework the Court uses to analyze Legacy in determining diversity—fraudulent joinder, misjoinder, or real party in interest—this Court should not consider Legacy's citizenship for diversity purposes because it is merely a nominal plaintiff, whose "claims" are meritless as a matter of law, and who was added solely for the purpose of attempting to destroy diversity.[6]

---

[6] ICD raises these issues in its Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(6). [D.E. 28].

1.  **Legacy Has No Possibility of Success on Count I for Breach of Contract**

In Count I for "Declaratory Relief," Tierney seeks declaratory relief regarding the Independent Agent Agreement. [D.E. 1-1] at 16. But Legacy is not a party to that agreement. Indeed, Legacy did not even allegedly exist when the agreement was executed in 2015. It came into existence in 2019, four years later. Tierney Decl. [D.E. 10-1] ¶¶ 17-18.

Generally, "someone who is not a party to the contract has no standing to enforce it or to recover extra-contractual damages for the wrongful withholding of benefits to the contracting party." *Jones v. Aetna Cas. & Sur. Co.*, 33 Cal. Rptr. 2d 291, 294 (Ct. App. 1994). For that reason, one who is not a party to a contract has no standing to seek declaratory relief with respect to the rights and obligations under the contract. *Forde v. HSBC Bank USA, N.A.*, B291582, 2019 WL 6140756, at *6 (Cal. Ct. App. Nov. 20, 2019) (unpublished) (collecting cases where "plaintiff who was not a party to the contract that was the subject of declaratory relief action lacked standing"); *Burlison v. Allstate Ins. Co.*, CV124092GHKMRWX, 2012 WL 12884683, at *6 (C.D. Cal. Sept. 25, 2012), *adhered to*, CV124092GHKMRWX, 2013 WL 12125434 (C.D. Cal. Feb. 1, 2013) (noting that in order seek a declaration of rights under a contract, party "must have standing to sue on the contract to assert" the declaratory claim).

Thus in *D. Cummins Corp. v. United States Fid. & Guar. Co*., 201 Cal. Rptr. 3d 585, 593 (Ct. App. 2016), the court squarely rejected the contention that a non-party to a contract had standing to sue for a declaratory judgment concerning the contract. The court found that that the entity, like Legacy, did not have more than an "indirect interest" in the contract. *Id.* at 592. Likewise, in *Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225, 234 (Ct. App. 2007), *as modified* (Apr. 24, 2007), the court "readily conclude[d] that an individual who was not a party to any relevant contract

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

and had no direct interest in the contract had no standing to seek declaratory relief. That despite the fact that the  individual was a shareholder of the corporate parties who were related to the contract, and stood, like Legacy, to suffer some indirect loss depending on the construction of the contract, but such indirect injury does not confer standing.  *See also Lafferty v. Wells Fargo Bank*, 153 Cal. Rptr. 3d 240, 258 (Ct. App. 2013), *as modified on denial of reh'g* (Feb. 27, 2013) ("Because the dealer agreement was not made for the benefit of the Laffertys, they lack standing to seek declaratory and injunctive relief under that agreement."); *Burlison v. Allstate Ins. Co.*, CV124092GHKMRWX, 2012 WL 12884683, at *6 (C.D. Cal. Sept. 25, 2012), *adhered to*, CV124092GHKMRWX, 2013 WL 12125434 (C.D. Cal. Feb. 1, 2013) ("Plaintiff does not have standing to reform the State Farm Policy because she was not a party to it or a beneficiary of it.  She also does not have standing to assert a claim for a declaration of her rights in the Policy.").

Tierney alleges that Legacy "intends to lawfully compete against Defendants for business, both through Tierney, and other possible new employees or independent contractors that may have executed independent agent agreements with Defendants in the past," and thus Legacy and Tierney "have a reasonable belief that Defendants are seeking to interfere with their business relationship." Complaint ¶ 39.  While these allegations lay bare Tierney's scheme—to poach ICD's agents who are contractually prohibited from competing against ICD—it does not make Legacy a contracting party nor establish that Legacy is "directly affected" by Tierney's contract (or those of the other unnamed agents).  *D. Cummins*, 201 Cal. Rptr. 3d at 592.

Another court has rejected standing for declaratory relief under nearly identical facts.  *Evans v. Sirius Computer Sols., Inc.*, 3:12-CV-46-AA, 2012 WL 1557294, at *2 (D. Or. May 1, 2012).  There, an employee (Evans) and his new employer (Nordisk) sued Evans's former employer (Sirius) for a declaration regarding the non-solicitation

provision in Evans's employment contract with Sirius.  The Court found that Nordisk, as a non-party to the contract, did not have standing to sue because it was "neither a party nor a third-party beneficiary to the Agreement between Evans and Sirius."  *Id*; *see also Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp.*, 14-CV-3073-PJH, 2016 WL 4698931, at *3 (N.D. Cal. Sept. 8, 2016) ("[I]t appears to the court highly questionable that GSO [the new employer] has standing to assert this claim as pled, as GSO is not a California employee who has been injured by the inclusion of a noncompete provision in his/her employment agreement.").

### 2. <u>Legacy Has No Possibility of Success on Count II for UCL Violations</u>

Likewise, in Count II, for violations of California's Unfair Competition Law ("UCL"), Legacy asserts no independent injury or basis to bring a claim; its injury is entirely derivative of the injury that ICD's conduct is allegedly causing Tierney.  Courts have noted that "Recovery based *on a derivative loss* and an assignment of rights would contravene the statutory intent only the party personally injured recover under the UCL."  *Shetty v. Kinecta Fed. Credit Union*, B266192, 2017 WL 167518, at *7 (Cal. Ct. App. Jan. 17, 2017) (unpublished) (emphasis added); *see also Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Cour*t, 46 Cal. 4th 993, 1002, 209 P.3d 937, 943 (2009) (noting that "a private action under that law [must] be brought exclusively by a 'person who has suffered injury in fact and has lost money or property as a result of the unfair competition.'") (quotation omitted); *Drazan v. Atl. Mut. Ins. Co.*, C 10-01371 SI, 2010 WL 2629576, at *3 (N.D. Cal. June 29, 2010) (finding that plaintiffs lacked UCL standing where they "are not suing based upon their own claims").

### 3.     Legacy Has No Possibility of Success on Count III for Common Law Unfair Competition

Count III, for common law unfair competition, suffers from these same defects: Legacy points to no conduct by ICD directed at Legacy, only conduct directed to Tierney. Plaintiffs ask the Court to "declare that Defendants' act of requiring Tierney and similarly situated independent insurance agents, to sign the Independent Agency Agreement as a condition of Defendants continuing their business relationship with agencies with whom the independent agent has a relationship constitutes unfair competition in violation of California's common law." D.E. 1-1 ¶ 53.  They further allege that "It constitutes common law unfair competition for Defendants to require independent agents, such as Tierney, to sign an agreement containing facially invalid or overly broad restrictive covenants." *Id.* ¶ 54.

These allegations do not come close to what is required to state a claim for common law unfair competition.  "The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another ... [, or] acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market." *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1123, 1138 (S.D. Cal. 2014) (*quoting Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir.1997)).

"The decisive test of common law unfair competition is whether the public is likely to be deceived about the source of goods or services by the defendant's conduct." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1032 (C.D. Cal. 2011), aff'd, 738 F.3d 1085 (9th Cir. 2013) (*citing Academy of Motion Picture Arts and Sciences v. Benson*, 15 Cal.2d 685, 690, 104 P.2d 650 (1940)).  "The cornerstone of a claim for common law unfair competition is 'fraud ... practiced by one in securing the trade of a rival dealer.'"  *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911,

1013 (C.D. Cal. 2011). Thus in *Oracle Corp. v. DrugLogic, Inc.*, C 11-00910 JCS, 2011 WL 5576267, at *12 (N.D. Cal. Nov. 16, 2011) the court agreed that "under common law, 'unfair competition' is limited to passing off."

Legacy makes no allegation that ICD passed off any of Legacy's goods as its own, or anything remotely similar, engaged in any fraud in order to deceive anyone into thinking that Legacy's goods were its own, or anything remotely similar. This claim by Legacy has no chance of success, and Legacy should be dismissed from this action.

## CONCLUSION

For the foregoing reasons, ICD respectfully requests that the Court deny Plaintiffs' Motion to Remand.

DATED:  June 22, 2020

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By:  */s/ David Boies*

DAVID BOIES (Admitted *Pro Hac Vice*)
  dboies@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8201
Facsimile:  (914) 749-8300

EDWARD H. TAKASHIMA, State Bar No. 270945
  etakashima@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017
Telephone: (213) 629-9040
Facsimile:  (213) 629-9022